[No. A087149. First Dist., Div. Four. Jan. 25, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL TONY GALLARDO, Defendant and Appellant.

[No. A088030. First Dist., Div. Four. Jan. 25, 2000.]

In re DAVID LOPEZ on Habeas Corpus.

[No. A088200. First Dist., Div. Four. Jan. 25, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
HECTOR MORA, Defendant and Appellant.

**COUNSEL**

Richard Such, under appointment by the Court of Appeal, for Defendants and Appellants Michael Tony Gallardo and Hector Mora.

Joseph Baxter for Petitioner David Lopez.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Christina V. Kuo and Kenneth C. Young, Deputy Attorneys General, for Plaintiff and Respondent in No. A087149.

Bill Lockyer, Attorney General, and Gerald A. Engler, Deputy Attorney General, for Respondent in A088030.

Bill Lockyer, Attorney General, and Bridget Billeter, Deputy Attorney General, for Plaintiff and Respondent in No. A088200.

**OPINION**

**HANLON, P. J.**—We consider here three appeals, each of which tests the limits on appealability of a postjudgment order.

The first appeal causes us to consider whether a defendant (Michael Tony Gallardo) may create an appealable order by sending the sentencing court a letter asking the court to strike in the interest of justice portions of a completed sentence imposed 15 years earlier. The issue arises because resourceful counsel has formulated an end run around the "Three Strikes" law—nunc pro tunc dismissal in an old case of charges that otherwise would be considered "strikes" against the defendant in a new case. We conclude that neither the superior court's order declining Gallardo's proposal nor its refusal to reconsider the order is appealable. The appeal is dismissed.

The second appeal (by David Lopez) presents a classic example of a habeas corpus petition presented to the superior court and denied by that court. Instead of filing a new petition in this court, Lopez has sought to appeal. Although he argues for special treatment to gain procedural advantages the appeal would provide and he claims his situation is different because the lower court issued an order to show cause before denying relief, we apply the long-standing rule that the defendant may not appeal denial of a petition for writ of habeas corpus. Although we dismiss his appeal, we will refile the notice of appeal as a petition for writ of habeas corpus and will then consider it separately.

The third appeal (by Hector Mora) straddles the line between appealable orders and nonappealable rulings. Mr. Mora sought a writ of error *coram nobis*, but the superior court denied relief, describing the motion as one for "writ of error *coram nobis* or habeas corpus." We conclude that the request was in the nature of a petition for writ of habeas corpus and that appeal does not lie. As with the Lopez appeal, we will refile the notice of appeal as a petition for writ of habeas corpus and consider it separately.

We announce, however, that in the future we will not be as accommodating as we have been to Lopez and Mora when defendants insist on appealing when they should have brought petitions for writs of habeas corpus to this court.

## Procedural History

### Michael Tony Gallardo's Proceedings

On June 3, 1983, Gallardo pled guilty (in the old case) to attempted robbery, aggravated assault and simple kidnapping, charges arising out of a single incident with a single victim. All three counts included deadly weapon enhancements based upon use of an iron bar. The court dismissed a charge of kidnapping for purposes of robbery. On July 8, 1983, the court sentenced Gallardo to the mitigated term of three years in state prison for kidnapping, plus one year for the deadly weapon. The court sentenced him to the middle terms on the other two counts, but made them concurrent with the kidnap count and ordered the other two counts stayed pursuant to Penal Code section 654.[1]

On July 25, 1996, Gallardo was arrested in San Mateo County (in the new case) on charges of committing lewd acts upon a child (§ 288, subd. (a)), attempting by threats or violence to prevent an executive officer from

---

[1]All statutory references are to the Penal Code.

performing a duty (§ 69) and terrorist threats against a police officer (§ 422). The three 1983 convictions were charged as "strikes" for purposes of enhancement under the Three Strikes law. In a court trial, the San Mateo court found Gallardo guilty of two counts and found that all the priors were true. He was sentenced to state prison for a term of 30 years to life in the new case.

On appeal in the new case, this court rejected Gallardo's claim that, when considering whether to strike one or more of the prior convictions, the trial court failed to take into account that the three prior convictions arose out of a single indivisible transaction and that two counts had been stayed pursuant to section 654. We concluded that "at the time of sentencing, the trial court considered all relevant factors, including the interrelated nature of the prior strikes, and did not abuse its discretion." (*People v. Gallardo* (Nov. 30, 1998, A078385) [nonpub. opn.].)

While we were processing the appeal from the new case, Gallardo set into motion the events leading to this purported appeal from the old case. On June 25, 1998, he sent a letter to Judge Richard Arnason, the sentencing court in the 1983 Contra Costa conviction, asking the court to strike nunc pro tunc the two counts the court had previously stayed. Gallardo credited Justice Chin's dissent in *People v. Benson* (1998) 18 Cal.4th 24, 43-44 [74 Cal.Rptr.2d 294, 954 P.2d 557] (*Benson*), for the idea of striking the priors, but not for the notion that the court might do so 15 years after pronouncing sentence (which appears to have been counsel's idea). In his letter to Judge Arnason, Gallardo expressed his opinion that a formal motion was not required "since an exercise of discretion under section 1385 is on the court's own motion in any case." Counsel for Gallardo did enlist support from Gallardo's Contra Costa trial attorney, he served opposing counsel, and he suggested a hearing be held to air all views. He offered to appear before the court on July 9 or some other convenient date.

On July 9, 1998, the court issued a minute order decision in the old case denying Gallardo's "invitation" for five stated reasons. Although the minute order recited that the matter was not reported and that defendant was not present, it did not record whether counsel for either side was present.

Gallardo promptly sought reconsideration, challenging each of the court's stated reasons. The court denied the informal request for reconsideration. This appeal followed, purporting to appeal both court orders in the old case.

We issued an order to show cause why the appeal should not be dismissed because the orders are not appealable. In our order, we asked Gallardo to

consider and comment upon the following analysis: "Where the defendant seeks to vacate a judgment and reopen the proceedings after appeal has been resolved or the time for appeal has passed, the request, however formulated and characterized, is in the nature of a habeas corpus petition unless it qualifies as a petition for writ of error *coram nobis* or invokes rights established by . . . section 1016.5 or a similar statute. The court's ruling on the request, therefore, does not qualify as an appealable order within the meaning of . . . section 1237, subdivision (b)."

After explaining the other two appeals also under consideration and conducting a general review of appealability in criminal cases, we will consider Gallardo's response to our order to show cause.

*David Lopez's Proceedings*

This is Lopez's third appeal arising from events in 1993. In 1995, we affirmed appellant's conviction for multiple offenses, including torture, forcible oral copulation, child endangerment, kidnapping, assault and possession of a controlled substance. The trial court had sentenced Lopez to 15 years and four months based upon eight of the 26 counts of which Lopez was convicted but, without explanation, "stayed execution" on the remaining counts, including the torture count, which carried a life term. We granted the People's cross-appeal and remanded for resentencing with instructions that the trial court impose sentence for all 26 counts and cite the specific authority for any terms it stayed.

The court resentenced, imposing an indeterminate life term for torture and a determinate term aggregated from various counts and enhancements. Lopez appealed again. In an opinion filed January 24, 1997, we accepted Lopez's theory that the court intended the life term to be concurrent with the others and we ordered the abstract amended to that effect. We then rejected appellant's suggestion that we remand to permit the court to exercise its discretion, in accordance with the subsequent decision in *People v. Norrell* (1996) 13 Cal.4th 1 [51 Cal.Rptr.2d 429, 913 P.2d 458], whether to stay the sentence on the most serious count. We found that the court's initial sentencing to 15 years and four months showed that it realized it was not required to sentence him to the term for the most serious offense. We explained: "Because the trial court was aware of its discretion at the original sentencing to proceed in the manner described in *People v. Norrell, supra,* 13 Cal.4th 1 and because nothing in our opinion suggests the contrary, there is simply no basis upon which to conclude that the trial court lacked such awareness at resentencing. Accordingly, there is no support for remand as a result of *Norrell*." (*People v. Lopez* (Jan. 24, 1997, A073671) [nonpub. opn.].)

Nearly two years later, appellant filed in superior court a petition for writ of habeas corpus. He sought to raise claims of ineffective counsel at trial and defects during resentencing. He presented a declaration from resentencing counsel showing the attorney's understanding that the resentencing judge believed his "hands had been tied" by this court's first opinion and that he did not have authority to stay the life term.

The superior court issued an order to show cause. The People objected on timeliness grounds and challenged the merits of Lopez's claims. Lopez's current attorney responded with legal arguments and a declaration explaining the course of his research from the time he was approached by the family in February 1997, until the petition was filed in December 1998. On June 21, 1999, after a short hearing during which Lopez requested the matter be set for an evidentiary hearing, the court denied the petition, stating in its minute order that it "summarily denies the motion pursuant to [section] 1484 . . . ." Lopez appealed.

We issued an order to show cause why the appeal should not be dismissed because the order denying a petition for writ of habeas corpus was not appealable. We cited two decisions (*In re Clark* (1993) 5 Cal.4th 750, 767, fn. 7 [21 Cal.Rptr.2d 509, 855 P.2d 729]; *People v. Garrett* (1998) 67 Cal.App.4th 1419, 1421-1423 [79 Cal.Rptr.2d 803]) explaining that the defendant has no right to appeal under such circumstances. In a later part of this opinion, we will consider Lopez's response to our order to show cause.

*Hector Mora's Proceedings*

On September 19, 1997, following a no contest plea, Mora was convicted of driving under the influence in an incident that caused injury. When he changed his plea to no contest, Mora received the standard advice that his plea might have immigration consequences. He was sentenced to three years in state prison. When he completed service, he was picked up by immigration authorities and placed in a detention center and was slated for deportation. He filed a "motion to vacate (writ of error *coram nobis*)" asserting that his trial attorney assured him he need not worry about immigration consequences and could deal with them later. He claimed that had trial counsel investigated he would have discovered that Mora would be automatically subject to deportation as a result of his plea.

The People replied that writ of error *coram nobis* could not be granted for ineffective counsel and argued that, in any case, Mora's assertions did not make a case for issuance of the writ. The People asserted that Mora was fully

informed of the immigration consequences. After hearing, which included testimony by trial counsel, the court denied the motion. The court's written order was captioned "order after hearing on the defendant's motion to vacate (writ of habeus [*sic*] corpus.)" Mora appealed, describing the order as "the order of motion to vacate (writ of Error *Coram nobis* or Habeus [*sic*] Corpus)."

On September 2, 1999, we issued an order to show cause why the appeal should not be dismissed because the order was not appealable. We pointed to authority stating that appeal would not lie from denial of writ of error *coram nobis* if the petition failed to state a prima facie case for relief or merely duplicated issues that could have been resolved in other proceedings. We suggested that Mora's petition below functioned as a petition for writ of habeas corpus, whose denial was not appealable. We will consider Mora's response after we have examined the law on the subject and the contentions in the other two appeals.

## Appeals in Criminal Cases

■ "[A]n order is not appealable unless declared to be so by the Constitution or by statute. [Citations.]" (*People v. Keener* (1961) 55 Cal.2d 714, 720 [12 Cal.Rptr. 859, 361 P.2d 587].) Stated simply, a criminal appeal by the defendant may be taken only from "a final judgment of conviction" (§§ 1237, subd. (a), 1466, subd. (2)(A)) or from "any order made after judgment, affecting the substantial rights" of the party (§§ 1237, subd. (b), 1466, subd. (2)(B)). Our resolution of these three appeals hinges on interpreting and applying the phrase "order made after judgment, affecting the substantial rights" of the defendant.

If interpreted broadly, the phrase would apply to any postjudgment attack upon the conviction or sentence. Postjudgment trial level attacks seeking to nullify convictions and/or sentences come in many forms. They may be called, for example, motions to vacate, motions to correct, or motions to set aside judgments, petitions for writ of habeas corpus, or petitions for writ of error *coram nobis*. The court's denial of relief in any such situation could affect the defendant's substantial rights. However, decisional authority has limited the scope of the phrase, defining appealability more narrowly. We collect and consider here appellate court limitations on appealability of superior court orders rejecting postjudgment challenges.

A ruling denying a motion to vacate judgment[2] would qualify semantically as an order after judgment affecting substantial rights, but such an

---

[2] Or, for that matter, any of the attacks upon the judgment listed above.

order ordinarily is not appealable when the appeal would merely bypass or duplicate appeal from the judgment itself. (*People v. Thomas* (1959) 52 Cal.2d 521, 527 [342 P.2d 889].) "In such a situation appeal from the judgment is an adequate remedy; allowance of an appeal from the order denying the motion to vacate would virtually give defendant two appeals from the same ruling and, since there is no time limited [*sic*] within which the motion may be made, would in effect indefinitely extend the time for appeal from the judgment." (*Ibid.*)

Several exceptions have modified this general prohibition, however, including a narrow exception when the record on appeal would not have shown the error, and an exception for attacks upon void judgments. (6 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) Appeal, §§ 3171-3173, pp. 3927-3930.) Furthermore, the California Supreme Court has acknowledged that both the general rule and its exceptions are court created and has concluded that appellate courts may, when circumstances warrant, entertain appeals from rulings denying motions to vacate judgments. The standards for accepting such appeals are similar to those applied by the courts when deciding whether to review on the merits claims made by a petition for extraordinary writ. (*People v. Banks* (1959) 53 Cal.2d 370, 379-381, fn. 5 [1 Cal.Rptr. 669, 348 P.2d 102] (*Banks*).) In *Banks*, the court entertained the appeal because it presented a "question as to the constitutionality or interpretation of a statute which is of concern to a number of persons other than the petitioner" and because the question had not been previously answered by the Supreme Court. (*Id.* at p. 381, fn. 5.)

Several courts have accepted without comment appealability of rulings in one narrow category of motions to vacate: motions to vacate brought under section 1016.5, subdivision (b), for failure to advise of immigration consequences. (*People v. Suon* (1999) 76 Cal.App.4th 1 [90 Cal.Rptr.2d 1]; *People v. Ramirez* (1999) 71 Cal.App.4th 519 [83 Cal.Rptr.2d 882]; *People v. Shaw* (1998) 64 Cal.App.4th 492 [74 Cal.Rptr.2d 915]; *People v. Gontiz* (1997) 58 Cal.App.4th 1309 [68 Cal.Rptr.2d 786]; *People v. Castaneda* (1995) 37 Cal.App.4th 1612 [44 Cal.Rptr.2d 666].)[3] These decisions appear to defy the tenet that rulings on motions to vacate are not appealable when they offer the

---

[3]Section 1016.5, subdivision (b), authorizes a deportable noncitizen to move to vacate judgment and withdraw his or her plea if, after January 1, 1978, the court failed to advise the defendant about the immigration consequences of a plea. The statute provides that "[a]bsent a record that the court provided the advisement required by this section, the defendant shall be presumed not to have received the required advisement" and states that the court "shall vacate the judgement" if the defendant makes the proper showing. (*Ibid.*) Three decisions applying the statute are pending for review by the California Supreme Court. (*People v. Sandoval* (1999) 73 Cal.App.4th 404 [86 Cal.Rptr.2d 431], review granted Oct. 20, 1999, S081438; *People v. Posas* (1999) 72 Cal.App.4th 1245 [85 Cal.Rptr.2d 749], review granted Sept. 22,

defendant a second chance to appeal the judgment itself. However, if the appeal record in such a case did not show that the defendant was an immigrant, the case would meet the silent record exception to nonappealability. Where the record would have supported appeal from the judgment itself, but the judgment was not appealed, permitting appeal from the ruling on the motion to vacate may correlate to the Legislature's specifically authorizing the motion and explicitly directing courts to grant relief upon a proper showing.[4] Because these decisions are not from the state's highest court and are silent about their rationale, they do not signal any alteration of the basic rule that appeal from denial of a motion to vacate does not normally provide a second chance to appeal the judgment itself.[5]

■ For better or worse, the terms "motion to vacate" and "petition for writ of error *coram nobis*" are often used interchangeably and the two procedures are similar in scope and effect. (Prickett, *The Writ of Error Coram Nobis in California* (1990) 30 Santa Clara L.Rev. 1, 19-20 & fn. 80 (Prickett).) However, courts have applied more precise rules for appeals from denials of petitions for writ of error *coram nobis*.[6] Denial of a defendant's request for *coram nobis* relief is appealable (*People v. Allenthorp* (1966) 64 Cal.2d 679, 683 [51 Cal.Rptr. 244, 414 P.2d 372]) unless the petition failed to state a prima facie case for relief (*People v. Kraus* (1975) 47 Cal.App.3d 568, 575, fn. 4 [121 Cal.Rptr. 11]) or the petition merely duplicated issues which had or could have been resolved in other proceedings (*People v. Vaitonis* (1962) 200 Cal.App.2d 156, 159 [19 Cal.Rptr. 54]; see generally Prickett, *supra*, at pp. 48-66).

*Coram nobis* will not issue to vacate a plea of guilty solely on the ground that it was induced by misstatements of counsel (*People v. Rodriguez* (1956)

---

1999, S080554; and *In re Resendiz* (1999) 71 Cal.App.4th 145 [83 Cal.Rptr.2d 721], review granted July 21, 1999, S078879.)

[4]These decisions descend from a line of appeals challenging orders denying the postjudgment relief authorized by section 1203.4 for a defendant who succeeds on probation. (*People v. Romero* (1991) 235 Cal.App.3d 1423, 1425-1426 [1 Cal.Rptr.2d 468]; *People v. Hawley* (1991) 228 Cal.App.3d 247, 248, fn. 2 [278 Cal.Rptr. 389]; *People v. Chandler* (1988) 203 Cal.App.3d 782, 787 [250 Cal.Rptr. 730].)

[5]At most, they imply that appeal is permitted because these motions to vacate are equivalent to petitions for writ of error *coram nobis*. (See, e.g., *People v. Gontiz, supra*, 58 Cal.App.4th at pp. 1312-1313; *People v. Castaneda, supra*, 37 Cal.App.4th at p. 1618.) However, these motions typically would not meet the standards for writ of error *coram nobis* because they would not ask the court to evaluate newly discovered evidence. They would merely seek to have the court grant a statutory remedy for its own dereliction.

[6]A remedy that must be sought from the trial court only before appeal has been perfected (*People v. Haynes* (1969) 270 Cal.App.2d 318, 321 [75 Cal.Rptr. 800]) and requires newly discovered evidence which undermines the judgment but does not address factual issues determined at trial (*People v. Shipman* (1965) 62 Cal.2d 226, 230 [42 Cal.Rptr. 1, 397 P.2d 993]). The function of the writ of error *coram nobis* has diminished greatly as the scope of the writ of habeas corpus has expanded. (*People v. Adamson* (1949) 34 Cal.2d 320, 326-328 [210 P.2d 13].)

143 Cal.App.2d 506, 508 [299 P.2d 1057]) or where the claim is that the defendant did not receive effective assistance from counsel (*People v. Ibanez* (1999) 76 Cal.App.4th 537, 546, fn. 13 [90 Cal.Rptr.2d 536]; *People v. Soriano* (1987) 194 Cal.App.3d 1470, 1477 [240 Cal.Rptr. 328, 65 A.L.R.4th 705]). Where *coram nobis* raises only such grounds, an appeal from the superior court's ruling may be dismissed as frivolous. (See *People v. Shorts* (1948) 32 Cal.2d 502, 516-517 [197 P.2d 330]; *People v. Sumner* (1968) 262 Cal.App.2d 409, 413, 414 [69 Cal.Rptr. 15].)

In a myriad of situations, including but not limited to those covered above, the defendant may seek to have judgment vacated by a petition for writ of habeas corpus, an all-purpose remedy. ■ Although the People may appeal the granting of a writ of habeas corpus, the detainee has no right to appeal its denial and must instead file a new habeas corpus petition in the reviewing court. (*In re Clark* (1993) 5 Cal.4th 750, 767, fn. 7 [21 Cal.Rptr.2d 509, 855 P.2d 729]; *People v. Garrett, supra,* 67 Cal.App.4th at pp. 1421-1423.) One court has authorized a defendant to appeal, however, in the limited circumstance that the habeas corpus petition led to a "sentencing rehearing" at which the court considered whether to dismiss a prior conviction under the authority of *People v. Tenorio* (1970) 3 Cal.3d 89 [89 Cal.Rptr. 249, 473 P.2d 993], a decision that removed the prosecutor's control over dismissals of certain charges. (*People v. Wax* (1972) 24 Cal.App.3d 302 [101 Cal.Rptr. 289].) This exception was created without analysis in a case where appealability may not have been raised by the parties. Another division of the same court has declined to follow *Wax* in a parallel circumstance. (*People v. Garrett, supra,* at pp. 1422-1423.)[7]

### THE GALLARDO APPEAL

*Gallardo's Response to the Order to Show Cause*

■ Gallardo tacitly accepts the principles of appealability stated in this court's order to show cause. He contends, however, that he has a right to appeal because the superior court in the old case failed to recognize its power to dismiss, nunc pro tunc, the charges it had long ago stayed. Displaying commendable candor, Gallardo acknowledges that he had no right to move to dismiss the convictions (§ 1385 permits only the court or prosecutor to initiate a dismissal), that he would have no right to challenge the court's decision if it held an appropriate hearing and exercised its

---

[7]The California Supreme Court ordered depublished an opinion reaching the same conclusion as *Wax* (and the opposite conclusion from *Garrett*) for a resentencing hearing triggered by a habeas corpus petition brought in the context of the Three Strikes law under the authority of *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 [53 Cal.Rptr.2d 789, 917 P.2d 628].

discretion not to dismiss them, that he has no right to challenge the convictions by writ of habeas corpus (because he is not confined under a conviction for the priors), and that his invitation to the court did not qualify as a petition for writ of error *coram nobis*. He insists, however, that he is entitled to appeal the court's decision not to hold a hearing and is entitled to a "determination that the reasons given by the sentencing judge for denying a hearing—essentially, that he did not have the power to grant the relief which would be requested at the hearing—were not proper reasons for denying a hearing."

*Gallardo Discussion*

Gallardo's unique arguments appear to contend that (1) even though he had no right to move for dismissal, he had a right to a hearing on this nonmotion, and (2) even though he has no right to challenge the court's adverse decision, he could appeal the court's articulated reasons for deciding adversely without a hearing. Gallardo's view seems to be that the orders are appealable not because of the nature of the decisions but because of the reasons the court placed on the record.

In its minute order rejecting Gallardo's proposal, the court stated: "The invitation [to consider striking some of the charges] is denied for each of the following reasons: (1) The plea was pursuant to . . . Section 1192.5, wherein the District Attorney dismissed certain charges in consideration of the plea. (2) The Judgment has long since become final. (3) Laches. (4) The very recent case of . . . *Benson* [(1998)] 18 Cal.4th 24. (5) Lastly, *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937]."

Restating Gallardo's argument, he asserts that the order is appealable simply because it is an order after judgment affecting his substantial rights. By this argument, he seems to be saying that despite possessing no right to move to strike or to have the court exercise its discretion in a particular way, he retains a substantial right to second guess the court's articulated reasons for not doing what he had no right to have the court do.

*People v. Pritchett* (1993) 20 Cal.App.4th 190 [24 Cal.Rptr.2d 391], persuasively answers Gallardo's appealability claims. The defendant in *Pritchett* failed to appeal his sentence of four years and four months. However, after the time for appeal passed, he asked the court to recall his sentence pursuant to section 1170, subdivision (d), and to either reduce it to three years or reimpose the same sentence to restart the time for appeal. The court refused to reduce the sentence but, with the prosecutor's consent,

resentenced the defendant to the same sentence. The defendant appealed. Division Three of the First Appellate District dismissed the appeal.

*Pritchett* noted that section 1170, subdivision (d), permitted a court to recall a sentence on its own motion, but it conferred no standing on a defendant to move to recall the sentence. "Consequently, the courts have uniformly held that an order *denying* a defendant's request to resentence pursuant to section 1170, subdivision (d) is not appealable as an order affecting the substantial rights of the party. This is because the defendant has no right to request such an order in the first instance; consequently, his 'substantial rights' cannot be affected by an order denying that which he had no right to request. [Citations.]" (*People v. Pritchett, supra,* 20 Cal.App.4th at p. 194.) The court also rejected the idea that the defendant's rights might be greater because the sentencing court there granted the request to recall and then resentenced the defendant to the same term. (*Ibid.*)

The situation in *Pritchett* was very much like the circumstance here. The only significant differences are that the trial court here did not accept Gallardo's invitation to act on its own motion and that it stated reasons for not doing so. However, appealability depends upon the nature of the decision made, not the court's justification for its ruling. No additional appellate rights accreted to Gallardo because Judge Arnason expressed his belief he could not dismiss convictions long since final or because he believed Supreme Court decisions prevented him from doing so.[8]

### THE LOPEZ APPEAL

*Lopez's Response to the Order to Show Cause*

█ Lopez admits that he could file a petition for writ of habeas corpus in this court to seek the relief sought by his appeal. He asserts, however, that "there are practical reasons why such a petition may not be within appellant's reach." The only impediment he identifies is expense. He notes that he is not entitled to appointed counsel as a matter of right in a habeas corpus proceeding, whereas one would be appointed for his appeal. He also notes

---

[8]For purposes of this analysis, we assume Judge Arnason was stating that he was barred from dismissing the charges, which is one interpretation of his comments. However, we observe that other interpretations are possible. Judge Arnason may merely have been declining to exercise his discretion in appellant's favor because (1) the district attorney had given something up in a plea bargain, (2) everyone had operated under the judgment for a long time, (3) appellant had unreasonably delayed seeking dismissal, (4) the *Benson* court showed it was not averse to allowing all the charges to be used as "strikes," even when some had been stayed because of section 654, and (5) lower courts are obligated to follow the dictates of higher courts; respect for *Benson* would be undermined by nunc pro tunc dismissals.

that a writ petition is not as desirable because it could be summarily denied without a hearing or a written opinion.

Lopez supports his preference for appeal by describing a line of cases commencing with *People v. Wax, supra,* 24 Cal.App.3d 302. He overlooks, however, the fact that the California Supreme Court decertified the only decision explicitly applying *Wax* beyond its own circumstances. In the face of decisions that state that appeal may not be taken from denial of a habeas corpus petition, he proposes an exception applicable when the trial court has issued an order to show cause before denying the petition.

*Lopez Discussion*

Even if we were disposed to do so, which we are not, we are not at liberty to change the rules on appealability of habeas corpus rulings in the manner requested by Lopez. The Legislature has provided that the People may appeal from the granting of habeas corpus relief (§ 1506), but has not provided that remedy for a defendant. The California Supreme Court has, on more than one occasion, stated that the defendant may not appeal denial of a petition for writ of habeas corpus. (*In re Clark, supra,* 5 Cal.4th at p. 767, fn. 7; *In re Hochberg* (1970) 2 Cal.3d 870, 876 [87 Cal.Rptr. 681, 471 P.2d 1], disapproved on other grounds in *In re Fields* (1990) 51 Cal.3d 1063 [275 Cal.Rptr. 384, 800 P.2d 862]; *Loustalot v. Superior Court* (1947) 30 Cal.2d 905, 913 [186 P.2d 673].) In its comprehensive explanation of habeas corpus proceedings, the *Hochberg* court made no exception for cases in which the superior court issued an order to show cause or held an evidentiary hearing before denying the habeas relief.

*People v. Wax, supra,* 24 Cal.App.3d 302, stands virtually alone in suggesting that appeal may lie from a superior court's habeas corpus denial. Most recently, *People v. Garrett, supra,* 67 Cal.App.4th at pages 1422-1423, described by Lopez as a "wild card" decision, noted that the issue of appealability appeared not to have been raised by the *Wax* parties and was not discussed by the court. *Garrett* then refused to extend *Wax* to other habeas corpus rulings. So do we.

As did *Garrett,* however, we will treat the appeal as a petition for writ of habeas corpus. Unlike *Garrett,* which decided the petition in an unpublished portion of the appealabililty opinion, however, we will divert the habeas corpus matter into a separate proceeding and decide it there.

## THE MORA APPEAL

### Mora's Response to the Order to Show Cause

 Mora asserts that his motion in superior court was a hybrid, containing elements of both a habeas corpus petition and a petition for writ of error *coram nobis*. He claims that the latter elements predominated and that, for that reason, appeal is the appropriate remedy for the court's denial of his request. He concedes that if the fact issue involved solely counsel's ineffectively failing to advise him that his plea would automatically lead to deportation, habeas corpus would be the correct remedy. He insists, however, that *coram nobis* was an appropriate vehicle for inquiry into his ignorance of the consequences of his plea. According to Mora, the circumstance that his ignorance was accompanied by attorney incompetence merely makes habeas corpus relief an additional remedy available to him.

Mora maintains that, at a minimum, *coram nobis* relief was appropriate for the inquiry into his ignorance of the consequences of his plea—automatic deportation and denial of reentry. He suggests that his appeal would be limited to that issue and that he could raise issues of ineffective counsel by an ancillary petition for writ of habeas corpus to this court.

The People reply by noting that Mora's petition to the superior court rested entirely on ineffectiveness of counsel. They contend he may not, after the fact, transform the lower court proceedings in order to accommodate his possible appeal rights.

### Mora Discussion

 "A writ of *coram nobis* permits the court which rendered judgment 'to reconsider it and give relief from errors of fact.' [Citation.] The writ will properly issue only when the petitioner can establish three elements: (1) that some fact existed which, without his fault or negligence, was not presented to the court at the trial and which would have prevented the rendition of the judgment; (2) that the new evidence does not go to the merits of the issues of fact determined at trial; and (3) that he did not know nor could he have, with due diligence, discovered the facts upon which he relies any sooner than the point at which he petitions for the writ. [Citations.]" (*People v. Soriano,* ·*supra,* 194 Cal.App.3d at p. 1474 (*Soriano*).) A claim that the defendant was deprived of effective representation of counsel is not an appropriate basis for relief by writ of *coram nobis* and must be raised on appeal or by petition for writ of habeas corpus instead. (*Id.* at p. 1477.)

 *Soriano* provides the closest analogy to this case. The defendant there filed in the appellate court both an appeal from denial of a petition for

writ of error *coram nobis* and an original petition for writ of habeas corpus. In taking the plea, the trial court had advised the defendant, in the language of section 1016.5, that his guilty plea could have immigration consequences. Responding to the court's query if he understood, he said "yes." In the superior court *coram nobis* proceedings he claimed that, despite his assent, his English comprehension was limited and he did not understand the proceedings or the consequences. (*Soriano, supra,* 194 Cal.App.3d at pp. 1473-1476.) He also presented evidence that his attorney had advised him he would not be deported.

On appeal from the superior court's denial of *coram nobis, Soriano* affirmed the court's determination that the defendant's English skills were sufficient to understand the warning. (*Soriano, supra,* 194 Cal.App.3d at p. 1477.) The court addressed the ineffective counsel claims in the habeas proceeding, granting the relief sought. Uncontradicted evidence showed that counsel lacked sufficient knowledge of immigration law to provide appropriate advice about the consequences of the defendant's guilty plea. (*Id.* at pp. 1480-1482.)

Unlike defendant Soriano, Mora based his superior court claim entirely upon counsel's alleged ineffective representation. He seeks here, for the first time, to recast his superior court proceedings as a hybrid inquiry, as if it had focused in part upon his own ignorance of the immigration consequences of his plea and in part on counsel's advice. However, unlike defendant Soriano, Mora did not present to the superior court a factual claim that he did not understand the standard warning dictated by section 1016.5.

Ignoring how he argued the case below, Mora makes a valiant claim here that inquiry into the state of his knowledge was a more significant component of the proceedings in superior court than was examination of counsel's performance. However, we fail to see any aspect of the proceedings below that addressed something other than counsel's breach of his duty to provide complete and accurate advice.[9] We conclude that the proceedings below,

---

[9]Had the court not given section 1016.5 advice, or had Mora raised a factual challenge to the evidence that he had received section 1016.5 advice, Mora might legitimately claim now that the proceedings below went beyond ineffective counsel claims and could be characterized as *coram nobis*. However, in the face of the section 1016.5 warning, receipt of which was unchallenged, the only arrow in Mora's quiver below was ineffective counsel and his only remedy was habeas corpus. (Cf. *People v. Goodrum* (1991) 228 Cal.App.3d 397, 400, fn. 4 [279 Cal.Rptr. 120].)

however captioned, were in the nature of habeas corpus. Mora may not appeal the court's denial order.[10]

## DISPOSITION

### Gallardo's Appeal

Appellant having failed to successfully show cause, the appeal is dismissed. The order is not appealable.

### Lopez's Appeal

Appellant having failed to successfully show cause, the appeal is dismissed. The order is not appealable.

We note that Lopez has filed a petition for a writ of habeas corpus in this court (No. A089515). The clerk of this court is directed to make a copy of the notice of appeal and to refile it in proceeding No. A089515 as a request for a writ of habeas corpus. The record on Lopez's appeal will constitute the record for the habeas corpus proceeding and will be incorporated in that proceeding by reference. We will deem Lopez's petition to the superior court to constitute a petition to this court for the same relief.

### Mora's Appeal

Appellant having failed to successfully show cause, the appeal is dismissed. The order is not appealable.

The clerk of this court is directed to make a copy of the notice of appeal and to refile it in a separate proceeding as a request for a writ of habeas corpus. The record on Mora's appeal will constitute the record for the habeas corpus proceeding and will be incorporated in that proceeding by reference. We will deem Mora's motion/petition to the superior court to constitute a petition to this court for the same relief.

Poché, J., and Reardon, J., concurred.

A petition for a rehearing was denied February 22, 2000, and on February 10, 2000, and February 22, 2000, the opinion was modified to read as printed above. The petitions of both appellant Michael Tony Gallardo and petitioner David Lopez for review by the Supreme Court were denied April 12, 2000.

---

[10]Mora correctly observes that the superior court failed to give its reasons for denying habeas corpus relief, in violation of rule 260(e), California Rules of Court. The effect of the court's dereliction will be assessed in subsequent habeas corpus proceedings.