Filed 7/24/15  P. v. Dryg CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>EDWARD JAMES DRYG,<br><br>    Defendant and Appellant. | H041222<br>(Santa Clara County<br>Super. Ct. No. CC108386) |

In April 2014, appellant Edward James Dryg filed a petition for writ of error *coram nobis* in the superior court challenging a September 2003 order dismissing *without* prejudice a May 2001 criminal complaint charging him with three sex offenses.  After the dismissal without prejudice of the original May 2001 complaint, the prosecution filed a new complaint in October 2003.  Appellant pleaded no contest to the charged offenses in the new complaint.  Years later, in his 2014 *coram nobis* petition, appellant asserted he should never have been subjected to criminal prosecution because the court should have dismissed the original May 2001 complaint *with* prejudice.  The superior court denied appellant's petition, and he filed a notice of appeal challenging the order.  For the reasons discussed below, we will dismiss the appeal.

FACTUAL AND PROCEDURAL BACKGROUND[1]

In the summer of 1998, appellant (then 45) met a 16-year-old female, Amanda Doe, through an internet chat room. Appellant was living in Los Gatos. Amanda was a resident of Texas but was living in on-campus housing at the University of California, Berkeley. Appellant and Amanda met and had lunch. Shortly thereafter, appellant offered to pay Amanda to have sex with him. She agreed. Appellant picked her up and they went to Palo Alto. There, he orally copulated her, she orally copulated him, they had sexual intercourse, and he penetrated her anally with a dildo. Appellant paid Amanda $250.

About a year later, on or about September 9, 1999 (according to appellant's petition), appellant was cited in Santa Clara County for driving under the influence (Veh. Code, § 23152, subd. (a)). The Santa Clara County District Attorney's Office filed a complaint charging appellant with driving under the influence (Santa Clara County Municipal Court, No. E9912148; the DUI case). Because he was arrested on federal charges (discussed below), a bench warrant issued in the DUI case based upon appellant's failure to appear in court. Appellant was represented by David Gibson in the DUI case. On June 6, 2001, pursuant to the District Attorney's request, the court dismissed the DUI case.

In October 1999, after Amanda was hospitalized for suicidal tendencies, she revealed, during treatment, the 1998 incident with appellant. She later reported the incident to Palo Alto police, but Amanda did not know appellant's last name. The police were unable to locate appellant.

---

[1] Most of the procedural history is taken from an order denying appellant's petition for writ of habeas corpus by the United States District Court, Northern District of California, filed on April 13, 2009. (See *Dryg v. Mitchell* (N.D.Cal. Apr. 13, 2009, No. C 06-7729 PJH) 2009 WL1010520.) That order is part of the record on appeal.

Also in October 1999, appellant was arrested in the Northern District of Illinois and was charged with traveling in interstate commerce for the purpose of engaging in sex with underage persons. He pleaded guilty to the charge in September 2000 and was sentenced to 41 months in federal prison. While those proceedings were pending, appellant admitted his involvement in the 1998 incident with Amanda.

On May 3, 2001—while appellant was serving his sentence at the federal prison in Lompoc, California, in connection with his conviction of traveling in interstate commerce for the purpose of engaging in sexual acts with a minor—the District Attorney filed a complaint (Santa Clara County Superior Court, No. CC108386; the first criminal case), charging appellant with (1) unlawful sexual intercourse with a minor more than three years younger than the perpetrator (Pen. Code, § 261.5, subd. (c));[2] (2) oral copulation with a minor (§ 288a, subdivision (b)(1)); and (3) forcible sexual penetration by foreign or unknown object of a person under the age of eighteen (§ 289, subd. (h)). Later that month, the District Attorney lodged a detainer with the federal warden to bring appellant into local custody to prosecute the first criminal case. Appellant initially resisted the District Attorney's efforts to obtain temporary custody, but he later signed a "Notice and Demand for Trial Pursuant to California Penal Code § 1381.5 by a Person in Federal Custody" that was received by the District Attorney on February 11, 2002. On May 31, 2002, appellant, as a self-represented litigant, filed a motion to dismiss the first criminal case, contending the District Attorney had not complied with the time limits for bringing appellant's case to trial. Appellant cited both the speedy trial statute (§ 1381.5) and the California Interstate Agreement on Detainers statute (§ 1389; the IAD), contending the District Attorney had not complied with the time limits specified in either statute.

Appellant remained in federal custody until he completed his federal sentence on September 27, 2002, at which time he was placed in the custody of the Santa Clara

---

[2] Further unspecified statutory references are to the Penal Code.

3

County Superior Court. He was released on bail. In November 2002, he waived his right to a speedy trial. After a preliminary hearing on June 19, 2003, appellant was held to answer to the charges brought against him in the first criminal case.

In August 2003, appellant, through retained counsel, Jerome Mullins, filed a motion to dismiss the first criminal case. Mullins cited section 1381.5, arguing that appellant had "been denied his right to due process of law and the right to a speedy trial." The People filed written opposition to the motion. After a two-day hearing, on September 3, 2003, the superior court dismissed *without* prejudice the charges alleged in the first criminal case, based upon the People's failure to bring appellant's case to trial in a timely manner under section 1381.5. As later explained by the District Court in its 2009 order denying appellant's federal habeas petition: "The [superior] court found that the 90-day limit of § 1381.5, the speedy trial statute—not the 120-day limit of § 1389 [the IAD statute]—applied, based on the rule articulated in *Selfa* [*v. Superior Court* (1980)] 109 Cal.App.3d 182 (where prisoner's demand for speedy trial complies with both § 1381.5 and § 1389, 90-day period provided by § 1381.5 controls over 180-day period provided by § 1389)."

As noted by the District Court, the court in *Selfa*—following the principle that when two statutes contain different deadlines, courts harmonize them by ordinarily holding that the more specific statute controls—held that section 1389 was the more general statute and section 1381.5 "applies specifically to California, and focuses upon the right of prisoners in federal institutions in our state to the same 90-day trial right as is provided prisoners in state institutions. [Citation.]" (*Selfa*, at p. 188.) The District Court further explained: "The [superior] court noted that under Penal Code § 1387, the dismissal would be without prejudice. The [superior] court also indicated that were it not for the *Selfa* rule, it would have found that Dryg made a proper demand under Article III of the IAD, [S]ection 1389, and the dismissal would have been with prejudice. Finally,

4

the [superior] court suggested on the record that perhaps an extraordinary writ should be explored. [Record citation.]"

Appellant did not file an appeal or bring an extraordinary writ petition to challenge the superior court's order dismissing *without* prejudice the complaint in the first criminal case.

On October 14, 2003, the District Attorney refiled the charges against appellant (Santa Clara County Superior Court, No. CC330917; the second criminal case). Appellant retained new counsel, Guyton Jinkerson, who filed several pretrial motions, including (1) demurrers challenging the complaint, contending the statute of limitations had run on the criminal charges; (2) a "once in jeopardy plea" challenge; and (3) a motion to dismiss in which appellant asserted that his right to a speedy trial under sections 1381.5 and 1389 was violated. The court did not dismiss the second criminal case as a result of any of these motions. Appellant, on July 20, 2004, pleaded no contest to all three counts.

In August 2004, appellant filed a motion to arrest judgment in which he renewed his statute of limitations and speedy trial arguments. On September 30, 2004, after the court denied the motion and pursuant to the terms of a plea agreement, the court granted probation on various terms and conditions, including the condition that appellant serve a one-year county jail term. That same day, appellant filed a notice of appeal from: (1) the court's order overruling appellant's demurrer to the first amended information; (2) the court's order denying appellant's motion to dismiss; (3) the court's order denying appellant's motion to arrest judgment; and (4) the probation order. The superior court denied appellant's application for a certificate of probable cause, and this court dismissed the appeal on December 15, 2005. (*People v. Dryg* (Dec. 15, 2005, H028190 [order]).)[3]

---

[3] Appellant also filed a petition for writ of mandate with this court on December 27, 2004. We denied that petition on February 3, 2005. (*Dryg v. Superior Court*, H028278.)

5

In March 2006, appellant filed a petition for writ of habeas corpus with the superior court in which he contended that his trial counsel in the second criminal case (Jinkerson) had been ineffective by failing to argue that the charges refiled by the District Attorney in October 2003 should have been dismissed *with* prejudice pursuant to section 1389, and because Jinkerson failed to preserve that issue for appeal. The superior court denied the habeas corpus petition and thereafter denied appellant's motion for reconsideration. In August 2006, appellant filed a petition for writ of habeas corpus with the California Supreme Court, which was summarily denied on September 27, 2006.

In December 2006, appellant filed a petition for federal habeas corpus relief with the United States District Court, Northern District of California, in which the single issue raised was whether "his trial counsel [in the second criminal case, Jinkerson,] rendered ineffective assistance by not properly raising and preserving his challenge to the Interstate Agreement on Detainers." The District Court determined that the only cognizable claims raised in the habeas petition were whether Jinkerson had "provided ineffective assistance of counsel [in the second criminal case] by: (a) failing to inform him that a certificate of probable cause was necessary for him to appeal certain claims if he pleaded guilty or not contest; (b) failing to inform him that he could pursue a petition for writ of mandate or prohibition before trial on the detainer-related issues; and (c) failing to properly preserve issues regarding the detainer for appeal." On April 13, 2009, the District Court denied the petition for federal writ of habeas corpus in a detailed opinion. (*Dryg v. Mitchell*, *supra*, WL1010520.)

Meanwhile, on March 3, 2008, after appellant's probation had been revoked, the court imposed a prison sentence of two years for the three sex offense convictions. Appellant served his prison sentence and was released on parole.

On July 29, 2013, appellant filed a petition for writ of mandate with this court. In it, he urged that the superior court should be ordered to enter a dismissal *with* prejudice of the proceedings in the first criminal case. He contended: (1) the superior court had erred

6

in entering the dismissal *without* prejudice because the People's noncompliance "with the mandatory requirements of § 1389 Art. III$_{[,]}$ subd. (d) require[d], as the direct consequence for failing to bring [appellant] to trial within the statutory time limit," the dismissal *with* prejudice of Case No. CC108386; and (2) the superior court had acted in excess of its jurisdiction in entering a dismissal *without*, rather than *with*, prejudice. Appellant also contended that his counsel in the first criminal case (Mullins) had been ineffective because, among other things, he had failed (1) "to mount an adversarial defense based on the plain language of the relevant statutes and the facts on record"; (2) "to understand the nexus between the multiple detainers and the relevant statutes and case law which supported a right to a dismissal with prejudice"; (3) "to pursue a writ of mandate ordering the trial court to dismiss the action pursuant to [appellant's] May 29, 2002, timely filed motion to dismiss long before the proceedings of August 29 and September 3, 2003"; (4) "to seek a continuance on September 3, 2003, in order to timely file a motion for reconsideration on jurisdictional grounds to set aside the order of dismissal without prejudice"; and (5) "to either appeal the order of dismissal without prejudice or file for writ review in the Sixth District Court of Appeal."  Appellant sought an order requiring the superior court to vacate its prior order of dismissal *without* prejudice in the first criminal case and to enter a new order dismissing that case *with* prejudice, as well as an order vacating the judgment in the second criminal case as an illegal second prosecution conducted without jurisdiction.  We denied the petition on January 10, 2014.  (*Dryg v. Superior Court* (Jan. 10, 2014, H039947 [order]).)[4]

On April 24, 2014, appellant filed this petition in the superior court for a writ of error *coram nobis* to vacate the order of dismissal *without* prejudice that had been entered

_____

[4] Pursuant to Evidence Code sections 452, subdivision (d) and 459, subdivision (a), we take judicial notice of this mandamus proceeding before us, including appellant's petition and the order.  Judicial notice of this earlier proceeding, among other things, "help[s] complete the context of this case."  (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 306, fn. 2.)

7

on September 3, 2003.  Appellant urged the superior court to "enter a corrected order dismissing the charges *with* prejudice based on the facts in evidence but unknown to the court that would have prevented the judgment of dismissal without prejudice."  (Italics added.)  The superior court denied the petition on June 9, 2014.  This appeal followed.

DISCUSSION

*I.        Writ of Error* Coram Nobis

A writ of error *coram nobis* is the equivalent of a motion to vacate judgment. (*People v. Dubon* (2001) 90 Cal.App.4th 944, 950 (*Dubon*).)  It is a "limited . . . legal remedy."  (*People v. Kim* (2009) 45 Cal.4th 1078, 1092 (*Kim*).)  As explained by the California Supreme Court, the limited availability of this remedy is demonstrated by the fact that the typical circumstances in which writ relief has been available are:  (1) " '[w]here the defendant was insane at the time of trial and this fact was unknown to court and counsel[; (2) w]here [the] defendant was an infant and appeared by attorney without the appointment of a guardian or guardian *ad litem*[; (3) w]here the defendant was a *feme covert* and her husband was not joined[; (4) w]here the defendant was a slave and was tried and sentenced as a free man[; (5) w]here the defendant was dead at the time judgment was rendered[; (6) w]here default was entered against a defendant who had not been served with summons and who had no notice of the proceeding[; (7) w]here counsel inadvertently entered an unauthorized appearance in behalf of a defendant who had not been served with process[; (8) w]here a plea of guilty was procured by extrinsic fraud[; (9) w]here a plea of guilty was extorted through fear of mob violence[; (10) w]here [the] defendants and their counsel were induced by false representations to remain away from the trial under circumstances amounting to extrinsic fraud[; and (11) w]here by the failure of the clerk to properly file an answer[,] the party was deprived of his defense [citation].' "  (*Id.* at p. 1094, quoting *People v. Reid* (1924) 195 Cal. 249, 258-259, internal citations omitted.)

8

Thus, the writ of *coram nobis* is not a remedy to correct an error in a judgment or to contradict an issue already decided therein. (*Kim*, *supra*, 45 Cal.4th at p. 1092.) The court concluded: " ' "The writ of error *coram nobis* is not intended to authorize any court to review and revise its opinions; but only to enable it to recall some adjudication made while some fact existed which, if before the court, would have *prevented the rendition of the judgment*; and which without fault or negligence of the party, was not presented to the court." ' [Citation.]" (*Ibid.*)

There are three elements to a viable petition for writ of error *coram nobis*. The petitioner must show (1) " ' "that some fact existed which, without any fault or negligence on [petitioner's] part, was not presented to the court at the trial on the merits, and which if presented would have prevented the rendition of the judgment," (2) . . . that the "newly discovered evidence . . . [does not go] to the merits of issues tried; issues of fact, once adjudicated, even though incorrectly, cannot be reopened except on motion for new trial," . . . [and] (3) . . . ". . . that the facts upon which [petitioner] relies were not known to him [or her] and could not in the exercise of due diligence have been discovered by him [or her] at any time substantially earlier than the time of his [or her] motion for the writ. . . ." ' " (*Kim*, *supra*, 45 Cal.4th at p. 1093, internal citations omitted, quoting *People v. Shipman* (1965) 62 Cal.2d 226, 230.)

Thus, a new "fact" must be one that was unknown but existing at the time the judgment was entered. (*Kim*, *supra*, 45 Cal.4th at p. 1093.) The petition will not lie for the correction of errors at law, such as where a defendant is induced to plead guilty on the basis of an erroneous understanding of the law. (*Ibid.*) Nor will a *coram nobis* petition lie to vindicate "any number of constitutional claims" (*Id.* at p. 1095), such as a claim of double jeopardy reviewable on appeal or on a motion for new trial (*People v. Blalock* (1960) 53 Cal.2d 798, 801); a claim that the conviction was based upon evidence that was inadmissible (*People v. Parseghian* (1957) 152 Cal.App.2d 1, 3); or a claim of ineffective assistance of counsel that may be considered through an appeal or a petition for writ of

habeas corpus (*People v. Ibanez* (1999) 76 Cal.App.4th 537, 546, fn. 13 (*Ibanez*)). And "it is well-settled law . . . that where other and adequate remedies exist[,] the writ [of error *coram nobis*] is not available.' [Citation.]" (*Kim*, at p. 1094.)

The trial court's disposition of a petition for writ of error *coram nobis* is an appealable order, but only if the petition makes a prima facie showing for relief. (*Dubon*, *supra*, 90 Cal.App.4th 950.) As the California Supreme Court has explained: "In an appeal from a trial court's denial of an application for the writ of error *coram nobis*, a reviewing court initially determines whether defendant has made a prima facie showing of merit; if not, the court may summarily dismiss the appeal." (*People v. Totari* (2002) 28 Cal.4th 876, 885, fn. 4.) As another court has held: "Denial of a defendant's request for *coram nobis* relief is appealable unless the petition failed to state a prima facie case for relief or the petition merely duplicated issues which had or could have been resolved in other proceedings." (*People v. Gallardo* (2000) 77 Cal.App.4th 971, 982, internal citations omitted (*Gallardo*); see also *Dubon*, at p. 950.)

II.     *Standard of Review*

The disposition by the trial court of a petition for writ of error *coram nobis* is reviewed for abuse of discretion. (*Kim*, *supra*, 45 Cal.4th at p. 1095.)

III.     *The Petition Does Not Present a Prima Facie Case*

After briefing was completed, we asked the parties to submit letter briefs on the question of whether the appeal should be dismissed, based upon *Dubon*, *supra*, 90 Cal.App.4th at page 950 and *Gallardo*, *supra*, 77 Cal.App.4th at pages 982 to 983. We have received and considered the parties' letter briefs on this question.

We conclude this appeal is subject to summary dismissal for several reasons. First, it is plain that the underlying basis upon which appellant contends he is entitled to *coram nobis* relief is that he received ineffective assistance of counsel. Appellant asserted in his petition that "the facts proving the loss of jurisdiction were on the record when [appellant's] four separate defense lawyers were responsible to provide

10

constitutionally effective assistance in the defense. There can be no strategic initiative in avoiding the statutory and non-discretionary right to a dismissal with prejudice. Had the facts been presented knowingly and vigorously, the judgment of dismissal without prejudice would have been prevented." Appellant also stated in his petition that "defense counsel failed to take into consideration the totality of the statutes involved in the proceedings on August 29, and September 3, 2003, and thereby failed to follow mandatory procedures required by those statutes and the existing law of the case." We thus conclude the petition is a thinly disguised claim that appellant received ineffective assistance of counsel, which is not a proper basis for seeking relief in a *coram nobis* petition. (*Ibanez*, *supra*, 76 Cal.App.4th at p. 546, fn. 13; see also *People v. Soriano* (1987) 194 Cal.App.3d 1470, 1477.)

Second, the petition includes issues that could have been raised previously by appellant. (See *Gallardo*, *supra*, 77 Cal.App.4th at p. 982 [writ of error *coram nobis* not available to address issues that "could have been resolved in other proceedings"].) It is undisputed that appellant did not seek review of the September 3, 2003 order dismissing without prejudice the original complaint in the first criminal case. Appellant's failure to challenge the order occurred notwithstanding that the trial judge who made the order suggested that appellant explore the filing of an extraordinary writ petition. (See *Kim*, *supra*, 45 Cal.4th at p. 1093 [writ of error *coram nobis* not available where the defendant fails to avail himself or herself of another available remedy].)

Third, the petition includes issues that *were* resolved in other proceedings. As noted above, appellant raised the issues contained in his *coram nobis* petition previously in his July 2013 petition for writ of mandate filed with this court. He also raised many of the issues in his *coram nobis* petition in his (1) March 2006 petition for writ of habeas corpus filed with the superior court; (2) motion for reconsideration of the denial of that petition; and (3) December 2006 petition for federal habeas corpus relief filed with the United States District Court for the Northern District of California. Because the instant

11

petition is a "duplicat[ion of] issues which had . . . been resolved in other proceedings [citations]" (*Gallardo*, *supra*, 77 Cal.App.4th at p. 982), it fails to state a prima facie case for *coram nobis* relief.

Fourth, appellant has not made a prima facie showing of " ' "some fact [that] existed which, without any fault or negligence on [petitioner's] part, was not presented to the court at the trial on the merits and which if presented would have prevented rendition of the judgment." Citation.]' " (*Kim*, *supra*, 45 Cal.4th at p. 1093.) It is less than clear from the petition what fact appellant claims existed at the time of the September 2003 dismissal order which was not presented to the court at that time. It appears the claimed "fact" was a document filed in the DUI case. Appellant alleged in the petition that while he was in federal custody on April 11, 2001, attorney Gibson filed a motion for speedy trial under section 1381.5 in the DUI case. He alleged that this motion followed a detainer filed in January 2001 by the District Attorney in connection with the DUI case. He contends that (1) the fact of Gibson's having filed a motion for speedy trial in the DUI case was not brought to the attention of the superior court in the first criminal case when it was considering appellant's motion to dismiss; and (2) had the superior court been aware of the detainer and the motion in the DUI case, "it would have been required . . . [to] dismiss[] with prejudice" the complaint in the first criminal case under section 1389.

It is clear from the foregoing that the petition does not identify a fact in existence as of September 2003 that " ' "without any fault or negligence on [petitioner's] part, was not presented to the court" ' " in the first criminal case. (*Kim*, *supra*, 45 Cal.4th at p. 1093.) The fact that appellant's attorney (Gibson) filed in April 2001 a motion for speedy trial in the DUI case was a fact known at least to Gibson. Thus, since the fact was known to one of appellant's attorneys (Gibson) but was not presented to the court by his attorney in the first criminal case (Mullins), he (appellant) cannot establish that the failure to present the new fact was without his fault or negligence. (*Ibid.*) To the extent appellant contends his attorney (Mullins) was ineffective in failing to present all relevant

12

facts and arguments in support of the dismissal with prejudice of the first criminal case, such an ineffective assistance of counsel claim cannot be raised through a petition for writ of error *coram nobis*. (*Ibanez*, *supra*, 76 Cal.App.4th at p. 546, fn. 13; cf. *People v. Mbaabu* (2013) 213 Cal.App.4th 1139, 1147 [*coram nobis* petition inappropriate to vacate judgment entered after guilty plea based upon counsel being ineffective in failing to advise defendant of immigration consequences of his conviction].)

Fifth, appellant has not made a prima facie showing that existing facts " ' "were not known to him and could not in the exercise of due diligence have been discovered by him at any time substantially earlier than the time of his motion for the writ." ' [Citation.]" (*Kim*, *supra*, 45 Cal.4th at p. 1093.) As discussed, the "fact" of the filing of the motion for speedy trial in the DUI case was known at the time, at least by one of appellant's attorneys (Gibson). And, appellant acknowledges in his petition that his "four separate defense lawyers were responsible to provide constitutionally effective assistance in the defense" and "[t]here can be no claim of strategic initiative in avoiding the statutory and non-discretionary right to dismissal with prejudice. Had the facts been presented knowingly and vigorously the judgment of dismissal without prejudice would have been prevented." Furthermore, appellant admits in his petition that he "discover[ed] the facts that would have prevented the judgment in [the first criminal case] . . . late in 2009." He waited more than four years, until 2014, to file the *coram nobis* petition with the superior court in.[5] Appellant therefore failed to present a prima facie showing of diligence, the third required element of a petition for writ of error *coram nobis*. (*Kim*, *supra*, 45 Cal.4th at pp. 1098-1099; *People v. Shorts* (1948) 32 Cal.2d 502, 513 [petitioner's failure to allege that fact was one that "could not in the exercise of due

---

[5] The new "fact" appellant relies upon in his *coram nobis* petition—the April 2001 motion for speedy trial filed on his behalf by Gibson in the DUI case—was specifically referenced in appellant's petition for writ of mandate filed with this court in July 2013. Thus, appellant waited for more than three years to present this alleged new "fact" to any court.

diligence have been discovered by him at any time substantially earlier than the time of his motion for the writ" bars claim for *coram nobis* relief].)

Sixth, viewing the petition in its totality, it is clear the thrust of appellant's position is that the superior court erred when it ordered in September 2003 that the complaint in the first criminal case be dismissed *without* prejudice, rather than *with* prejudice, because it allegedly was unaware of all of the circumstances bearing on that decision. Those circumstances included the District Attorney's having lodged a detainer in the DUI case and attorney Gibson's having made an April 2001 motion for speedy trial in that case—characterized by petitioner as a "[section] 1389 At III subd. (a) compliant written request for disposition of that detainer." The petition thus seeks an order that " 'the court correct errors at law,' " a type of alleged error for which a petition for writ of error *coram nobis* is unavailable. (*Kim*, *supra*, 45 Cal.4th at p. 1093.)

Appellant failed in all of these ways to present a prima facie case in his petition for relief through a writ of error *coram nobis*. Accordingly, the court's denial of his petition is a not appealable.[6]

DISPOSITION

The appeal is dismissed.

---

[6] Even if we were to find the trial court's order appealable, the court did not abuse its discretion in denying the petition because it fails at the threshold for three procedural reasons. First, appellant failed to show that the facts upon which he relies were not known to him and could not in the exercise of due diligence have been discovered by him at any time substantially earlier than the time he filed the petition. (See *Kim*, *supra*, 45 Cal.4th at p. 1097.) Second, as noted in the discussion above, appellant failed to utilize other available remedies. (See *Kim*, *supra*, 45 Cal.4th at pp. 1099-1100.) And third, appellant challenged the judgment in piecemeal fashion, through successive proceedings for the same general purpose. (See *Kim*, *supra*, 45 Cal.4th at pp. 1100-1101.)

14

_____
MÁRQUEZ, J.


WE CONCUR:




_____
BAMATTRE-MANOUKIAN, ACTING P.J.




_____
MIHARA, J.