Filed 12/12/13  P. v. Holdridge CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>BRENT JOHN HOLDRIDGE,<br><br>        Defendant and Appellant. | A135692<br><br>(Humboldt County<br>Super. Ct. Nos. CR1000371,<br>CR1006116A & CR1001616) |

In this appeal, defendant Brent John Holdridge challenges an order denying his motion to withdraw his guilty pleas in three criminal cases.  Holdridge contends that, despite being promised probation with a suspended sentence, he was sentenced to serve seven years eight months in state prison.  According to Holdridge, he is entitled to withdraw his pleas because the enactment of the Criminal Justice Realignment Act of 2011[1] (Realignment Act) rendered it impossible for the court to comply with the plea agreement and place him on probation.  For reasons we shall explain, Holdridge's argument lacks merit.  The court's decision to deny probation was consistent with his plea agreement and was not compelled by the Realignment Act.  Accordingly, we affirm the judgment.

**PROCEDURAL BACKGROUND**

Holdridge appeals from an order denying his motion to withdraw his pleas in three Humboldt County cases.  For ease of reference, and consistent with the identification of

_____

[1]Stats. 2011, 1st Ex. Sess. 2011-2012, ch. 12, § 1.

the cases in the abstract of judgment, we shall refer to case number CR1000371 as case A, case number CR1006116A as case B, and case number CR1001616 as case C. Also relevant to this appeal is Mendocino County case number SCUKCRCR 09-93336202, which we shall refer to as case D. The Mendocino County case—case D—was the subject of a separate appeal in Division One of this court but nonetheless bears upon the issues in this appeal because Holdridge's plea agreement in cases A, B, and C turned on the sentence imposed by the Mendocino County Superior Court in case D.[2]

### Case A

In January 2010, the Humboldt County District Attorney filed a complaint in case A charging Holdridge with sale of methamphetamine (Health & Saf. Code, § 11379, subd. (a)), possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)), misdemeanor possession of marijuana while driving (Veh. Code, § 23222, subd. (b)), and driving a vehicle without a license plate (Veh. Code, § 5200, subd. (a)). In addition, as to the charge of selling methamphetamine, it was alleged that Holdridge had suffered two prior convictions for narcotics offenses (Health & Saf. Code, § 11370.2, subd. (c)).

### Case C

In March 2010, the Humboldt County District Attorney filed a complaint in case C charging Holdridge with sale or transportation of marijuana (Health & Saf. Code, § 11360, subd. (a)) and sale of methamphetamine (Health & Saf. Code, § 11379, subd. (a)).

### Case D (Mendocino County)

In April 2010, the Mendocino County District Attorney filed an information in case D charging Holdridge with transportation of methamphetamine (Health & Saf. Code, § 11379, subd. (a)) and possession of methamphetamine for sale (Health & Saf. Code, § 11378). It was also alleged that Holdridge had suffered two prior convictions for

_____

[2]At the request of the Attorney General, we take judicial notice of the record and appellate opinion in case D (*People v. Holdridge* (March 29, 2012, A134125 [nonpub. opn.]). (Evid. Code, §§ 452, subd. (d), 459, subd. (a); *People v. McKinzie* (2012) 54 Cal.4th 1302, 1350, fn. 1.)

2

narcotics offenses.  (Health & Saf. Code, § 11370.2, subd. (c).)  The charges in case D resulted from a probation search of Holdridge's car during a traffic stop in October 2009.  (See *People v. Holdridge, supra,* A134125.)

### July 2010 Plea in Cases A and C

In July 2010, Holdridge agreed to a conditional plea resolving cases A and C.  In case A he agreed to plead guilty to sale of methamphetamine and admit suffering two prior narcotics convictions, and in case C he agreed to plead guilty to sale or transportation of marijuana.  The remaining charges in cases A and C were to be dismissed.  The plea agreement specified that Holdridge was to be placed on probation after being sentenced to a ten-year term of imprisonment with execution of the sentence suspended.

### Case B

In October 2010, before Holdridge was sentenced in cases A and C, the Humboldt County District Attorney filed a complaint in case B charging Holdridge with possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)), possession of a firearm by a convicted felon (Pen. Code, former § 12021, subd. (a)(1)),[3] and maintaining a place for selling or using methamphetamine (Health & Saf. Code, § 11366).  As to the charge of possession of methamphetamine, it was alleged that Holdridge was armed with a firearm during the commission of the offense.  (§ 12022, subd. (a)(1).)  At a hearing conducted in November 2010, the parties agreed to continue sentencing in cases A and C pending the outcome of case D in Mendocino County.

### January 2011 Plea in Case D

In January 2011, Holdridge agreed to a plea resolving case D in Mendocino County.  He agreed to plead no contest to possession of methamphetamine for sale and admitted one prior narcotics conviction in exchange for dismissal of the remaining

---

[3]All further statutory references are to the Penal Code unless otherwise specified. Former section 12021, subdivision (a)(1) was repealed and reenacted as section 29800, subdivision (a)(1).  (See Stats. 2010, ch. 711, § 6.)

charges. The plea was an open plea with a maximum confinement time of six years. During the plea colloquy, the Mendocino County Superior Court admonished Holdridge that "[i]t's an open plea, meaning no representations are made to you as to whether you would be on probation or in custody or a prison term."

### *February 2011 Plea in Case B (plus Cases A and C)*

In February 2011, Holdridge agreed to a plea resolving case B in Humboldt County. He agreed to enter a plea of guilty to possession of a firearm by a convicted felon in exchange for dismissal of the remaining charges in case B. As part of the deal, he agreed that he would be subject to a maximum aggregate term of 10 years eight months in cases A, B, and C, with the understanding that execution of the sentence would be suspended and he would be placed on probation *if* he were granted probation in case D by the court in Mendocino County. In a letter to the probation department, the deputy district attorney explained the terms of the plea as follows: "The defendant is facing a maximum term of ten years and eight months on all three of his pending felonies [in Humboldt County]. The terms of the plea are that if he is placed on a grant of probation in Mendocino County, he will also receive probation here with the understanding it is 10 years, 8 months, execution of sentence suspended. If he receives prison in Mendocino County, he will also be sent to prison on our cases." Consequently, unlike the earlier, July 2010 plea deal involving cases A and C in which Holdridge was promised probation with a suspended sentence, the February 2011 plea deal resolving all three of Holdridge's Humboldt County cases (A, B, and C) offered the promise of probation *only if* the Mendocino County Superior Court first granted him probation in case D.

### *July 2011 Sentencing in Cases A, B, and C*

In a supplemental probation report prepared in April 2011, the Humboldt County probation department noted that the Mendocino County probation department was recommending a prison sentence for Holdridge in case D. In anticipation of being sentenced to prison in case D in Mendocino County, Holdridge asked the Humboldt County Superior Court at a hearing on July 5, 2011, to impose the shortest possible

4

prison sentence in cases A, B, and C.  The Humboldt County Superior Court proceeded to impose an aggregate prison term of seven years eight months in cases A, B, and C.

*July 2011 Motion to Withdraw Pleas*

On July 14, 2011, Holdridge filed a motion to withdraw his pleas in cases A, B, and C.  He argued that the prison sentence violated his plea agreement because he had not yet been sentenced in case D in Mendocino County.  In response to the motion, the Humboldt County Superior Court offered to vacate the sentence in order to permit Holdridge to be sentenced first in case D in Mendocino County.  In September 2011, with Holdridge's consent, the Humboldt County Superior Court vacated its sentence in cases A, B, and C while maintaining the pleas.  The court continued sentencing in cases A, B, and C pending sentencing in case D in Mendocino County.

*November 2011 Sentencing in Case D*

Holdridge was sentenced in case D in Mendocino County on November 4, 2011.  As reflected in the probation report, Holdridge was presumptively ineligible for probation under section 1203, subdivision (e)(4), because he had two prior felony convictions, although probation could be granted in an unusual case where the interests of justice would be served by that disposition.  The court denied probation after finding no unusual circumstances that would justify a grant of probation to Holdridge.  The court imposed a five-year split sentence under the Realignment Act, with two years to be served in county jail followed by three years under the mandatory supervision of the probation department. (See § 1170, subd. (h)(5)(B).)  Before the court pronounced sentence, the prosecutor observed that Holdridge would likely be sentenced to prison upon his return to Humboldt County because his conviction in case B for being a felon in possession of a firearm disqualified him being sentenced under the Realignment Act.  The prosecutor pointed out that Holdridge's Realignment Act sentence in case D would likely be converted to a state prison sentence following sentencing in Humboldt County in cases A, B, and C, because "if he goes to [state prison] out of Humboldt, he's going to go to [state prison] out of here as well, the way the Realignment law works."

5

***January 2012 Resentencing in Cases A, B, and C***

Holdridge was returned to Humboldt County for sentencing in cases A, B, and C after being sentenced in case D in Mendocino County. In a supplemental probation report, the probation officer noted that Holdridge was ineligible for sentencing under the Realignment Act as a result of his conviction for being a felon in possession of a firearm in case B. The probation officer also concluded there were no unusual circumstances justifying a grant of probation after pointing out that Holdridge was presumptively ineligible for probation under section 1203, subdivision (e)(4). The probation officer recommended reimposing the seven years eight months sentence that had previously been imposed but vacated in order to allow Holdridge to be sentenced first in case D in Mendocino County.

At sentencing in Humboldt County on January 24, 2012, Holdridge offered to waive presentence credits for a 10-year term of felony probation consecutive to the five-year split sentence he received in case D in Mendocino County. The court responded that Holdridge was ineligible for probation unless there were unusual circumstances as set forth in the applicable rule of court. The court denied probation and imposed an aggregate state prison sentence of seven years eight months in cases A, B, and C. Following the pronouncement of the sentence, the court advised Holdridge that he had to file a notice of appeal within 60 days if he wished to challenge the judgment or sentence.

Holdridge did not file a notice of appeal within 60 days after the sentencing hearing in January 2012. Instead, Holdridge retained as substitute counsel the attorney who had represented him in case D in Mendocino County.

***Postjudgment Motion to Withdraw Pleas***

On February 23, 2012, Holdridge's substitute counsel filed a motion to withdraw his pleas in the Humboldt County cases. Holdridge claimed he was not advised at the time of his pleas that he was presumptively ineligible for probation. He also contended he received ineffective assistance of counsel because his attorney failed to investigate the effect his plea would have upon his eligibility to serve his sentence in county jail under the Realignment Act. He further argued that his Humboldt attorney never contacted

6

counsel in Mendocino County to determine if there was any chance he would receive a probationary sentence in case D. Holdridge's substitute counsel later clarified that the motion to withdraw was primarily limited to the plea in case B, in which Holdridge was convicted of being a felon in possession of a firearm. Holdridge sought to withdraw his plea in case B to the firearm possession count and, in its place, enter a guilty plea to the charge of possessing methamphetamine. Because the firearm possession count in case B was the only conviction preventing Holdridge from being eligible for sentencing under the Realignment Act, he would be eligible to serve his time locally in county jail in cases A through D if the firearm possession count were dismissed.

### April 2012 Hearing on Motion to Withdraw Pleas

On April 19, 2012, the court held an evidentiary hearing on Holdridge's motion to withdraw his pleas. Holdridge claimed he did not understand that his probationary status in the Humboldt County cases (A through C) depended upon whether the court granted him probation in case D in Mendocino County. Nevertheless, his substitute counsel had previously acknowledged that the promise was that he would be given probation in Humboldt County if he were given probation in Mendocino County. Substitute counsel also acknowledged previously that Holdridge was not technically ineligible for probation under his pleas but claimed that he was denied the opportunity to serve his time in "local prison" under the Realignment Act as a result of his guilty plea to the charge of being a felon in possession of a firearm.

The prosecutor refused to restructure the plea agreement to allow Holdridge to be sentenced under the Realignment Act and serve his time in county jail. The prosecutor argued that Holdridge's testimony about his misunderstanding of the plea agreement was contradicted by the case files and the hearing transcript, all of which reflected a promise of probation if Mendocino County granted probation, "though the odds of [that] were pretty slim."

### Denial of Motion to Withdraw Pleas

Following the evidentiary hearing on the motion to withdraw pleas, the court found that Holdridge was adequately advised about the effect of his pleas and denied the

motion. The court rejected Holdridge's testimony as inaccurate and found he had consulted counsel for over two years during many appearances in his long-continued cases. According to the court, when Holdridge negotiated the 10 year eight month cap in cases A, B, and C, it was clear in the record of the plea that the Humboldt County court had delegated the probation decision to the Mendocino County court. The court had accepted the delegation of the probation decision to the Mendocino County court, reasoning that Holdridge might have "some advantage or some drug program or something else that he could convince that Mendocino County court there were sufficient unusual circumstances to justify granting him probation . . . ."

### *Resentencing in Case D*

After the court denied the motion to withdraw the pleas in cases A, B, and C, it declined to reconsider the seven year eight month aggregate sentence it had imposed in those cases. The court resentenced Holdridge in case D, in which the Mendocino County court had originally imposed a Realignment Act split sentence that was to be served locally. In case D, the Humboldt County court sentenced Holdridge to serve a two-year concurrent term for methamphetamine possession and imposed but stayed a three-year enhancement for the prior narcotics conviction.

On June 6, 2012, Holdridge filed notices of appeal from a purported judgment entered on April 19, 2012, in cases A, B, and C. The Humboldt County Superior Court granted certificates of probable cause in each of the appeals.

### DISCUSSION

**1.** *Appealability and Standard of Review*

At the outset, we address the Attorney General's contention that the appeal should be dismissed as untimely. The argument is premised on the fact that judgment was rendered on January 24, 2012, when the court denied probation, imposed a seven year eight month sentence, and advised Holdridge of his appeal rights, including the 60-day time limit for filing the notice of appeal. Holdridge ultimately filed an appeal in cases A through C on June 6, 2012, when he purported to appeal from the court's order of April 19, 2012, denying his motion to withdraw his pleas. According to the Attorney General,

8

the only judgment entered on April 19 was the term imposed on resentencing Holdridge in case D, from which no appeal was taken.   The Attorney General relies on the principle that there is no right to appeal from an order denying a motion to vacate a judgment of conviction on a ground that could have been reviewed on appeal from the judgment.  (See *People v. Totari* (2002) 28 Cal.4th 876, 882.)

We agree with the Attorney General that the appeal is untimely as to the judgment in cases A, B, and C entered on January 24, 2012.  However, the appeal is timely as to the order of April 19, 2012, denying Holdridge's motion to withdraw his pleas.  (See § 1237, subd. (b) [appeal may be taken from any order after judgment affecting the substantial rights of the party].)

A statutory motion to withdraw a plea under section 1018 may be made at any time before judgment has been entered upon a showing of good cause.  (*People v. Weaver* (2004) 118 Cal.App.4th 131, 145; *In re Vargas* (2000) 83 Cal.App.4th 1125, 1142; *People v. Castaneda* (1995) 37 Cal.App.4th 1612, 1616-1617.)  "In a criminal case, judgment is rendered when the trial court orally pronounces sentence."  (*People v. Ibanez* (1999) 76 Cal.App.4th 537, 543.)

In this case, because the court had already pronounced Holdridge's sentence by the time he filed his motion to withdraw his pleas, the motion does not qualify as a statutory motion to withdraw under section 1018.  Instead, it is more properly characterized as a postjudgment, nonstatutory motion to withdraw the pleas.  (See *People v. Castaneda, supra,* 37 Cal.App.4th at pp. 1616-1617.)

As the Attorney General points out, a postjudgment motion to withdraw a plea is the equivalent of an application for a writ of error *coram nobis*.  (See *People v. Kim* (2009) 45 Cal.4th 1078, 1096.)  " 'The writ will properly issue only when the petitioner can establish three elements:  (1) that some fact existed which, without his fault or negligence, was not presented to the court at the trial and which would have prevented the rendition of the judgment; (2) that the new evidence does not go to the merits of the issues of fact determined at trial; and (3) that he did not know nor could he have, with due diligence, discovered the facts upon which he relies any sooner than the point at

9

which he petitions for the writ.' " (*People v. Gallardo* (2000) 77 Cal.App.4th 971, 987.) It is well established that *coram nobis* does not lie for a claim of ineffective assistance of counsel. (*Ibid.*; accord *People v. Kim, supra,* 45 Cal.4th at p. 1104.)

Because a postjudgment motion to vacate a plea is the equivalent of a petition for writ of error *coram nobis*, we employ the same standard of review applicable to an appeal from such a writ proceeding. We will not disturb the trial court's decision unless the trial court abused its discretion. (*People v. Dubon* (2001) 90 Cal.App.4th 944, 951.)

## 2. *Motion to Withdraw Pleas*

Holdridge's primary contention on appeal is that the Realignment Act precluded the trial court from giving effect to the parties' plea agreement. He argues that he was promised probation but that changes in the law prevented the court from placing him on probation with a suspended sentence. He claims his plea bargain was "legally illusory" as a result of the Realignment Act. As we explain, Holdridge's argument misconceives the basis for the motion to withdraw the pleas in the trial court and the effect of the Realignment Act.

The Realignment Act " 'enacted sweeping changes to long-standing sentencing laws,' including replacing prison commitments with county jail commitments for certain felonies and eligible defendants." (*People v. Clytus* (2012) 209 Cal.App.4th 1001, 1004, fn. omitted.) Breaking with the historical practice of incarcerating all felons in state prison, the Legislature amended the Penal Code to make county jail the default location for incarcerating persons convicted of most nonserious, nonviolent, and nonsexual felonies. (See § 1170, subd. (h)(2).)

When a defendant is eligible to be sentenced under the Realignment Act, the sentencing court retains discretion to issue a "split sentence" in which part of the sentence is served in county jail and the remainder of the sentence is served under the supervision of the county probation officer in "mandatory supervision." (§ 1170, subd. (h)(5)(B); see *People v. Kelly* (2013) 215 Cal.App.4th 297, 301.) The Realignment Act applies to "any person sentenced on or after October 1, 2011." (§ 1170, subd. (h)(6).)

10

In the trial court, Holdridge's motion to withdraw his pleas was essentially premised on two contentions. First, he argued that he was not properly advised that he was presumptively ineligible for probation under section 1203, subdivision (e)(4) as a result of his prior felony convictions. He claimed that he would not have accepted a plea that conditioned his right to probation in cases A, B, and C upon the probation decision of the Mendocino County Superior Court in case D, when it was unlikely that the Mendocino court would have the power to grant probation absent unusual circumstances. Second, he argued that his counsel had failed to investigate the consequences of his guilty plea to the charge of being a felon in possession of a firearm in light of the Realignment Act. Recognizing that the felon in possession of a firearm conviction made him ineligible for sentencing under the Realignment Act,[4] Holdridge sought to withdraw his plea to that charge and renegotiate his plea deal in case B in order to dismiss that charge. Dismissal of the felon in possession of a firearm charge would permit Holdridge to serve his sentence in county jail pursuant to the Realignment Act. In effect, Holdridge sought to be placed on probation (or withdraw his pleas if that disposition was unavailable), or, in the alternative, restructure his plea deal so that he could serve his time in county jail instead of state prison.

The trial court rejected Holdridge's claims, reasoning that he was properly advised of the consequences of his plea. In essence, the court concluded that Holdridge accepted the plea deal well aware of the fact that it was unlikely he would be granted probation in case D in Mendocino County. As to the claim that Holdridge should have been advised of the fact that his plea deal in case B would render him ineligible for sentencing under the Realignment Act, the trial court correctly observed that, as of February 4, 2011, the date of his guilty plea in that case, the Realignment Act had not yet been enacted. As the

---

[4]A conviction for being a felon in possession of a firearm is punishable as a felony. (§ 29800, subd. (a).) The statute does not specify that the sentence must be served in state prison or that the crime is punishable under section 1170, subdivision (h). (§ 29800, subd. (a).) In such a case, the sentence must be served in state prison. (§ 18, subd. (a).)

11

trial court stated, the Realignment Act was only a "twinkle in Jerry Brown's eye at that time." Consequently, counsel could not be expected to advise his client about the consequences of a law that did not yet even exist. At the time Holdridge entered his guilty pleas in cases A, B, and C, it was not possible to serve a felony sentence in county jail. Holdridge made his pleas without any expectation that he could serve his sentence in county jail instead of state prison.

As noted above, a claim of ineffective assistance of counsel is not cognizable in a postjudgment motion to vacate a plea, which is the equivalent of an application for a writ of error *coram nobis*. (*People v. Gallardo, supra,* 77 Cal.App.4th at p. 987; *People v. Kim, supra,* 45 Cal.4th at p. 1104.) Because Holdridge's claims in the trial court turned on his assertion that he received ineffective assistance of counsel, the claims did not support a postjudgment motion to withdraw his pleas. The trial court did not abuse its discretion in rejecting Holdridge's motion.

On appeal, Holdridge takes a different approach, arguing that the Realignment Act prevented the trial court from granting him probation and giving effect to his plea agreement. Holdridge has failed to explain how and in what manner the Realignment Act prevented the trial court from granting him a probationary sentence. He was presumptively ineligible for probation under section 1203, subdivision (e)(4) as a result of his prior convictions. It was the application of section 1203, subdivision (e)(4) that effectively prevented the trial court from placing him on probation. That statute is wholly unrelated to the Realignment Act and was in effect at the time Holdridge entered his pleas. The Realignment Act made it neither more nor less likely that he would receive a probationary sentence. Simply put, the Realignment Act has no bearing upon whether the trial court could impose a probationary sentence or comply with the terms of Holdridge's plea agreement.

The only potential impact of the Realignment Act upon Holdridge is where he would serve his sentence if the court denied probation—county jail or state prison. Insofar as Holdridge claims he was denied the opportunity to serve his sentence in county jail, or to receive a split sentence under the Realignment Act, he is not entitled to relief.

12

He entered his plea agreement in case B before enactment of the Realignment Act. His plea was not contingent upon serving his sentence locally; indeed, at the time he entered his plea his only option was to serve his sentence in state prison if he did not receive probation. As the Attorney General observes, after the enactment of the Realignment Act, there were probably "countless defendants" in Holdridge's position who would have preferred to renegotiate their plea agreements to eliminate convictions that disqualified them from being able to serve their felony sentences locally in county jail. Like those defendants, Holdridge is not entitled to withdraw his plea simply because he could benefit from a change in the law that was not foreseen at the time he entered his plea.

We conclude the trial court acted well within its discretion in denying Holdridge's postjudgment motion to withdraw his pleas in cases A, B, and C.

**3.** *Corrections to Abstract of Judgment*

Holdridge contends the abstract of judgment should be corrected to reflect that the Humboldt County Superior Court imposed a $200 restitution fine in case D when it resentenced him in that case in April 2012. The Attorney General agrees that the abstract of judgment is defective, but not for the reason argued by Holdridge.

In case D, the Mendocino County Superior Court imposed a $1,000 restitution fine when it pronounced its split sentence under the Realignment Act in November 2011. When the Humboldt County Superior Court resentenced Holdridge in case D in April 2012, it not only imposed a concurrent prison term in place of the Realignment Act sentence but also imposed a $200 restitution fine in place of the $1,000 restitution fine that had been imposed by the Mendocino County Superior Court. At present, the abstract of judgment reflects the $1,000 restitution fine in case D originally imposed by the court in Mendocino County. Holdridge contends the abstract should be corrected to reflect the $200 restitution fine that was subsequently imposed by the Humboldt County Superior Court when it resentenced him in case D.

Holdridge's argument fails for a number of reasons. First, as noted above, Holdridge did not file an appeal in case D following his resentencing in April 2012. Consequently, a challenge to the sentence imposed in case D is not cognizable in this

13

appeal.[5]  Further, even though we possess the inherent authority to correct an unauthorized sentence (see *People v. Scott* (1994) 9 Cal.4th 331, 354), no grounds exist here to correct the sentence.  Because a $1,000 restitution fine is within the discretionary limits for such fines (see § 1202.4, subd. (b)(1)), the sentence is not unauthorized.  Moreover, on resentencing, the "[d]iscretionary decisions of the judges in the previous cases may not be changed by the judge in the current case."  (Cal. Rules of Court, rule 4.452(3).)  The Humboldt County Superior Court lacked the power to modify the discretionary decision of the Mendocino County Superior Court by reducing the restitution fine in case D to $200.  Thus, the abstract of judgment properly reflects a $1000 restitution fine in case D.

The Attorney General has identified a number of errors in the abstract of judgment.  Holdridge concedes that the errors must be corrected.

With respect to count A1 in box 1 of the abstract, the conviction date is listed as July 2, 2011, the conviction is listed as one for sale or transportation of marijuana (Health & Saf. Code, § 11360, subd. (a)), and the sentence is listed as the middle term of two years.  The conviction date should be July 2, 2010, the conviction should be for sale of a controlled substance (Health & Saf. Code, § 11379, subd. (a)), and the sentence should be listed as the upper term of four years.

With respect to count B2 in box 1 of the abstract, the conviction date is listed as February 24, 2011.  The correct date of the conviction is February 4, 2011.

With respect to count C1 in box 1 of the abstract, the conviction date is listed as July 2, 2011, and the conviction is listed as one for sale of a controlled substance (Health & Saf. Code, § 11379, subd. (a)).  The conviction date should be July 2, 2010, and the conviction should be for sale or transportation of marijuana (Health & Saf. Code, § 11360, subd. (a)).

---

[5]It should also be noted that Division One of this court upheld the $1,000 restitution fine in case D as part of its earlier decision affirming the judgment of the Mendocino County Superior Court.  (See *People v. Holdridge, supra,* A134125.)

14

Finally, in boxes 6 and 8 of the abstract, the aggregate sentence is listed as five years eight months.  The correct aggregate sentence is seven years eight months.

## DISPOSITION

The judgment is affirmed.  The trial court is directed to correct the abstract of judgment as follows: (1) count A1 should be listed as a conviction for sale of a controlled substance (Health & Saf. Code, § 11379, subd. (a)), with a conviction date of July 2, 2010, and an upper term sentence of four years; (2) count B2 should reflect a conviction date of February 4, 2011; (3) count C1 should be listed as a conviction for sale or transportation of marijuana (Health & Saf. Code, § 11360, subd. (a)), with a conviction date of July 2, 2010; and (4) the aggregate sentence in boxes 6 and 8 of the abstract should be listed as seven years eight months.  The trial court shall forward a certified copy of the corrected abstract to the Department of Corrections and Rehabilitation.


_____
McGuiness, P.J.


We concur:


_____
Pollak, J.


_____
Siggins, J.