Filed 3/18/14  P. v. Gold CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE, | C071112 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF046832) |
| v. | |
| JEFFREY JACOB GOLD, | |
| Defendant and Appellant. | |

In 2005, defendant Jeffrey Jacob Gold entered a negotiated plea of no contest to felony abuse of a dependent adult (Pen. Code, § 368, subd. (b)(1); unless otherwise specified, further references are to the Penal Code) in exchange for "no state prison," sexual offender registration during the term of probation only, and dismissal of two remaining counts.  The trial court imposed, but suspended execution of, a three-year state prison term and placed defendant on probation for five years subject to specified terms and conditions.

Upon completion of probation, defendant petitioned the trial court to withdraw his no contest plea and have his case dismissed (§ 1203.4), to reduce his felony conviction to a misdemeanor (§17, subd. (b), hereafter § 17(b)), and for an order terminating the requirement that he register as a sex offender (§ 290). The court granted defendant relief under section 1203.4, dismissed the case, and terminated his section 290 registration requirement, but denied his request to reduce the felony conviction to a misdemeanor.

Thereafter, defendant filed a second § 17(b) motion and a motion to set aside the judgment. The court denied both motions.

Defendant appeals, contending it was error for the trial court to deny the motion to set aside the judgment (also referred to as a petition for writ of error *coram nobis*), and the § 17(b) motion. We reject both contentions and affirm the judgment.

FACTS AND PROCEEDINGS

The victim, S.G., is a quadriplegic. At the time of the offense, defendant and S.G. were in an intimate relationship. At approximately 2:15 a.m. one morning, S.G. awoke to find defendant lying on top of her and having sexual intercourse with her. When she asked him what he was doing, he got off of her, put on his pants, and hurried out of her bedroom without responding. She called out to him several times but he did not respond. Defendant returned shortly and asked S.G. if she wanted him to call the police for her, but begged her not to call. Defendant admitted having had sexual intercourse with her while she slept that night and on other occasions. S.G. wanted to call the police, but defendant would not give her the phone. She asked defendant to contact a neighbor to stay with her so defendant could leave, but instead defendant closed the bedroom door and got into bed with S.G. S.G. told defendant he had until 3:00 a.m. to give her the telephone or she would begin to yell for help. She eventually did yell out, but no one heard her. Defendant told S.G. to stop screaming, saying he would change. S.G.

2

ultimately fell asleep in her bed, and defendant slept on the bedroom floor. In time, S.G. notified the authorities.

Defendant was charged with rape of an unconscious person (§ 261, subd. (a)(4)--count 1), misdemeanor abuse of a dependent adult (§ 368, subd. (c)--count 2), and felony abuse of a dependent adult (§ 368, subd. (b)(1)--count 3).

In 2005, pursuant to a negotiated plea bargain, defendant pleaded no contest to count 3 in exchange for "no state prison," registration as a sex offender "during my term of probation only," and dismissal of counts 1 and 2. The trial court imposed a state prison sentence of three years, but stayed execution of that sentence pending successful completion of five years probation. The court ordered terms and conditions of probation to include one year in county jail and section 290 sex offender registration during the term of probation.

In 2010, defendant, having completed probation, petitioned the trial court to withdraw his no contest plea and have his case dismissed, and to reduce his felony conviction to a misdemeanor pursuant to § 17(b). He filed a second petition seeking termination of the requirement that he register as a sex offender pursuant to section 290. The court granted defendant relief under section 1203.4 and dismissed the case, and terminated its prior order requiring section 290 registration. The court denied defendant's § 17(b) request.

Nearly a year later, defendant filed a second § 17(b) motion. The matter was continued for further briefing after the trial court indicated it was procedurally barred from hearing the motion due to the fact that defendant had been sentenced to state prison. Thereafter, defendant filed a motion to set aside the judgment and correct the sentence *nunc pro tunc*.

At the hearing on defendant's motions, the trial court stated it was going to treat the motion to set aside the judgment as a writ of error of *coram nobis*. The court denied the *coram nobis* petition, concluding imposition of a prison sentence, execution of which

is suspended, was not a violation of defendant's plea agreement. The court also denied defendant's § 17(b) motion for lack of "legal authority." Defendant filed a timely notice of appeal.

I

*Petition for Writ of Error Coram Nobis*

Defendant contends the trial court erred by denying his petition for writ of error *coram nobis* because the judgment imposed was contrary to his plea bargain. We may reverse the trial court's order only if we find an abuse of the trial court's discretion. (*People v. Ibanez* (1999) 76 Cal.App.4th 537, 540 (*Ibanez*).)

We note that, since neither the trial court nor the parties have questioned treating defendant's motion in the trial court as a petition for a writ of error *coram nobis*, we also will treat it as such without deciding whether to do so was appropriate in the first instance.

In *People v. Kim* (2009) 45 Cal.4th 1078 (*Kim*), the California Supreme Court spoke rather extensively of the writ of error *coram nobis* and its history. "We long ago emphasized the limited nature of this legal remedy. Quoting from an old treatise, we opined the writ of error *coram nobis* ' "does not lie to correct any error in the judgment of the court nor to contradict or put in issue any fact directly passed upon and affirmed by the judgment itself. If this could be, there would be no end of litigation. . . .The writ of error *coram nobis* is not intended to authorize any court to review and revise its opinions; but only to enable it to recall some adjudication made while some fact existed which, if before the court, would have *prevented the rendition of the judgment*; and which without fault or negligence of the party, was not presented to the court." ' (*People v. Mooney* (1918) 178 Cal. 525, 528.)" (*Id*. at p. 1092.)

Continuing, the *Kim* court observed:

4

"The seminal case setting forth the modern requirements for obtaining a writ of error *coram nobis* is *People v. Shipman* (1965) 62 Cal.2d 226 . . . .  There we stated: 'The writ of [error] *coram nobis* is granted only when three requirements are met.  (1) Petitioner must "show that some fact existed which, without any fault or negligence on his part, was not presented to the court at the trial on the merits, and which if presented would have prevented the rendition of the judgment."  [Citations.]  (2) Petitioner must also show that  the "newly discovered evidence . . . [does not go] to the merits of issues tried; issues of fact, once adjudicated, even though incorrectly, cannot be reopened except on motion for new trial."  [Citations.]  This second requirement applies even though the evidence in question is not discovered until after the time for moving for a new trial has elapsed or the motion has been denied.  [Citations.]  (3) Petitioner "must show that the facts upon which he relies were not known to him and could not in the exercise of due diligence have been discovered by him at any time substantially earlier than the time of his motion for the writ. . . ." ' (*Id.* at p. 230.)" (*Kim*, *supra*, 45 Cal.4th at pp. 1092-1093.)

In this matter, it is difficult to discern what fact existed which, without fault or negligence on defendant's part, was not presented to the court which would have prevented the rendition of judgment.  Since defendant did not file a formal petition for writ of error *coram nobis* but instead filed a "Motion for Order to Set Aside Judgment" which the court treated as a petition for writ of error *coram nobis*, we do not have particular allegations normally required in such a petition to turn to.

At its essence, defendant's argument is that the trial court erred because the judgment imposed in 2005 was contrary to his plea bargain, that is, that by imposing sentence and staying its execution, the trial court violated the plea bargain that, in defendant's view, called for a stay of the imposition of sentence.

But, in support of his *coram nobis* petition, defendant asserted in the trial court that he was not aware of the distinction between "being placed on probation after

5

judgment is imposed and being placed on probation after imposition of judgment is suspended." That lack of understanding, he urged, was the "fact" which was not represented to the court at the plea hearing, and which only became known to him when he sought to have his felony conviction reduced to a misdemeanor.

As to the point that the sentence handed down in 2005 was contrary to the plea agreement, it is patent that the defendant and his attorney were present at that sentencing and neither spoke up to object to the "fact" that the court's sentence contravened the plea agreement. Thus, even if that was a fact within the contemplation of a writ of error *coram nobis*, it is not a fact not made known to the trial court through no fault or negligence of the defendant.

As to the point that defendant did not know the significance of the imposition of sentence, but a stay of its execution, we find the court's holding in *Ibanez* instructive. Ibanez, who was represented by counsel, pleaded guilty to all counts in exchange for an eight-year sentence. The trial court discussed the plea form with Ibanez and, after finding his plea to be knowing and voluntary, took a factual basis for the plea and set a date for Ibanez to surrender for execution of sentence. (*Ibanez*, *supra*, 76 Cal.App.4th at p. 541.)

On the date scheduled for his surrender, Ibanez appeared with new counsel, who informed the court of Ibanez's wish to withdraw his plea based on prior counsel's alleged failures, including the failure to advise Ibanez fully of the potential consequences of his plea. (*Ibanez, supra,* 76 Cal.App.4th at p. 541.) Ibanez filed a "Motion and Petition for Writ of Error Coram Nobis to Vacate Judgment and Withdraw Plea of Guilty" alleging his guilty plea should be withdrawn because he was not advised by prior counsel or the court that his plea to multiple counts of child molestation against multiple victims subjected him to the potential of civil commitment proceedings under the Sexually Violent Predators Act (SVPA). (*Ibid.*) The trial court granted the petition, concluding "the law was unclear whether civil commitment proceedings under the SVPA might be construed as a direct penal consequence of the guilty plea to which a defendant must be

6

informed before he pleads," and Ibanez had not initialed the plea form's box for "potential civil commitment." (*Id.* at pp. 541-542.)

The People appealed, claiming the trial court abused its discretion. (*Ibanez, supra,* 76 Cal.App.4th at p. 544.) Ibanez countered that there was no abuse of discretion because "the fact unknown to the court at the time of his guilty plea was that he did not know he faced the potential of civil commitment under the SVPA." (*Ibid.*)

The court of appeal reversed. Finding Ibanez's ignorance regarding the potential for civil commitment under the SVPA was a legal question which cannot be corrected by a *coram nobis* petition, the appellate court concluded Ibanez failed to meet the first of the three elements necessary for *coram nobis* relief. (*Ibanez, supra,* 76 Cal.App.4th at pp. 545-547, 549.)

The logic in *Ibanez* applies with equal force here. The claimed unknown fact—defendant's misunderstanding of the distinction between imposition of a suspended imposition sentence and a suspended executed sentence and its significance in his case--is not an error of fact, but rather a legal issue. As such, it is not the basis upon which *coram nobis* relief may be granted.

Defendant argues neither the court nor his attorney explained to him the differences between "suspended imposition probation" and "suspended execution probation." To the extent this argument suggests that defendant ultimately claims he did not receive the effective assistance of counsel, we note that a writ of error *coram nobis* is not the proper method to raise an issue of ineffective assistance of counsel. (*People v. Crouch* (1968) 267 Cal.App.2d 64, 69-70; *People v. Mendez* (1956) 144 Cal.App.2d 500, 503; *People v. Blevins* (1963) 222 Cal.App.2d 801, 804.) "*Coram nobis* will not issue to vacate a plea of guilty solely on the ground that it was induced by misstatements of counsel [citation] or where the claim is that the defendant did not receive effective assistance from counsel [citations]. Where *coram nobis* raises only such grounds, an

7

appeal from the superior court's ruling may be dismissed as frivolous." (*People v. Gallardo* (2000) 77 Cal.App.4th 971, 982-983.)

In any event, even if defendant's ignorance of the significance of the court imposing sentence and staying it, we cannot find on this record that the court's sentence violated the plea agreement. In exchange for his no contest plea to one count, the remaining counts against him were dismissed. The court imposed a state prison sentence but stayed execution of that sentence such that defendant suffered "no state prison"—that is, he was not made to serve any time in state prison--and was instead placed on formal probation for five years. Upon defendant's completion of the term of probation, the court terminated the order requiring him to register as a sex offender.

The plea form signed by defendant on February 1, 2005, states that defendant agreed to plead no contest to the charge of felony abuse of a dependent adult (§ 368, subd. (b)(1)) on the condition of "no state prison" and "registration as a sexual offender during my term of probation only." While the plea form contained the words "no state prison," there was no stipulation or condition, either in writing or on the record, that the court would not impose and suspend execution of a state prison sentence. We again note that when the trial court proceeded to impose and then suspend execution of sentence, the defendant and his attorney did not voice an objection or otherwise disabuse the court of any perceived misunderstanding. In short, there was no suggestion in any of this that the plea was also conditioned on the court staying imposition of sentence.

Defendant places great weight on the court's statement to him at the time the court took his plea on February 1, 2005 (not, as asserted by defendant, at the sentencing hearing in May 2005) that if the court "were to place you on felony probation and then you were to violate probation your violation could result in a prison commitment. And that commitment could be for as long as 4 years." This, defendant argues, is evidence that the court and the parties "truly contemplated" suspended imposition of a prison sentence.

8

We disagree and read the court's statement during the plea colloquy as merely reflecting the fact that, if the court at sentencing decided to impose but stay the aggravated prison term for a violation of section 368, subdivision (b)(1) and thereafter defendant violated his probation, the court could, in its discretion, send defendant to state prison for four years.

The trial court did not abuse its discretion in denying defendant's motion to vacate the judgment (petition for writ of error *coram nobis*).

II

*Section 17, Subdivision (b)*

Next, defendant contends the trial court erred when, relying on *People v. Wood* (1998) 62 Cal.App.4th 1262 (*Wood*), it denied his § 17(b) motion to reduce his felony conviction to a misdemeanor, the trial court citing a lack of authority to do so. He asks us to forego the reasoning in *Wood*, a case dealing squarely with the § 17(b) issue with which we are now faced, and instead extrapolate from the reasoning set forth in *People v. Parker* (2013) 217 Cal.App.4th 498 (*Parker*), a case dealing with the denial of a section 1203.4 petition. We decline to do so.

"Section 17, subdivision (b) provides, in relevant part, as follows: 'When a crime is punishable, in the discretion of the court, by imprisonment in the state prison or by fine or imprisonment in the county jail, it is a misdemeanor for all purposes under the following circumstances: [P] (1) After a judgment imposing a punishment other than imprisonment in the state prison. [P] . . . [P] (3) When the court grants probation to a defendant without imposition of sentence and at the time of granting probation, or on application of the defendant or probation officer thereafter, the court declares the offense to be a misdemeanor.' " (*Wood, supra*, 62 Cal.App.4th at p. 1267.)

9

"An application by a defendant to have the trial court declare a 'wobbler' a misdemeanor [pursuant to section 17(b)] may be made at any time, even after probation is terminated [citation]." (*Wood, supra*, 62 Cal.App.4th at p. 1267, fn. 3.)

Section 17(b) gives the trial court broad discretion to reduce a wobbler offense from a felony to a misdemeanor. (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977.) The party attacking the sentence has the burden to show that the decision was irrational or arbitrary. (*Ibid.*) Absent such a showing, " ' . . . the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.' " (*Id.* at pp. 977-978, citing *People v. Superior Court (Du)* (1992) 5 Cal.App.4th 822, 831.)

In *Wood,* the defendant pleaded guilty to multiple counts of forgery and, after a six-year prison term was imposed, the trial court suspended execution of the sentence and placed her on probation. (*Wood, supra,* 62 Cal.App.4th at p. 1265.) Later, the defendant sought early termination of probation and a reduction of her offenses to misdemeanors pursuant to § 17(b). The trial court terminated probation, but refused to reduce the offenses. (*Wood* at p. 1266.)

The Court of Appeal affirmed, holding a trial court may not reduce a felony to a misdemeanor under § 17(b)(3) when it has imposed and suspended execution of sentence at the time probation was granted. (*Wood, supra*, 62 Cal.App.4th at p. 1267.)

The result is the same here. The trial court imposed but suspended execution of a state prison sentence. Imposition of that prison sentence rendered defendant's offense a felony. After the prison sentence was imposed, the trial court lacked authority to reduce the offense to a misdemeanor. (§ 17(b); *Wood, supra,* 62 Cal.App.4th at pp. 1264, 1267, 1271; see *People v. Feyrer* (2010) 48 Cal.4th 426, 438-439.)

We decline defendant's urging that we seek guidance not from *Wood,* but from *Parker.* Unlike *Wood, Parker* provides no guidance for, and indeed says nothing about, the application of § 17(b). While defendant urges that the rationale in *Parker*--i.e., felony

10

"probationers" are eligible for section 1203.4 relief--should also apply to § 17(b) motions by "probationers" regardless of whether those "probationers" received suspended imposition sentences or suspended execution sentences because not doing so would otherwise render absurd results, he cites no authority for this proposition, and we are aware of none.  We therefore see no reason to deviate from the rationale of *Wood*.

The trial court did not err in denying defendant's § 17(b) motion.

DISPOSITION

The judgment is affirmed.

                            HULL     , Acting P. J.

We concur:

   ROBIE    , J.

   HOCH    , J.