Filed 5/21/26  P. v. Hughes CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>LAWRENCE PARKER HUGHES II,<br><br>Defendant and Appellant. | G063726<br><br>(Super. Ct. No. FBA700552)<br><br>O P I N I O N |

Appeal from a postjudgment order of the Superior Court of San Bernardino County, Joseph B. Widman, Judge. Dismissed.

Jean Matulis, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Charles C. Ragland, Assistant Attorneys General, Melissa Mandel and Seth M. Friedman, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

A jury convicted defendant Lawrence Parker Hughes II of two counts of first degree murder. (Pen. Code, §§ 187, subd. (a).)[1] The jury also found true lying-in-wait (§ 190.2, subd. (a)(15)) and multiple-murder special circumstance (§ 190.2, subd. (a)(3)) allegations as to each count. The trial court sentenced defendant to two consecutive sentences of life without the possibility of parole. Another panel of this court affirmed the judgment. (*People v. Ige* et al. (May 28, 2015, G050722) [nonpub. opn.].)

In July 2020, defendant filed a petition for resentencing under former section 1170.95 (now § 1172.6).[2] The trial court denied the petition at the prima facie stage in November 2021.

In August 2023, defendant filed another petition for resentencing, which cited new law. Two days later, the trial court summarily denied the petition because it "was previously denied" in November 2021. Defendant then filed a motion for reconsideration, which the trial court also denied.

Defendant raises four arguments on appeal. First, he contends he could not have been found guilty of first degree murder due to inadequate jury instructions on uncharged conspiracy. Second, he argues "[a] finding of first degree murder under [the CALCRIM No. 521] instruction would not have rehabilitated a murder conviction based on the uncharged conspiracy premise as instructed." Third, he claims the lying-in-wait and multiple murder special circumstance findings do not preclude resentencing relief. Finally, he argues his due process rights were violated because the trial court did not issue an order to show cause.

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

[2] Effective June 30, 2022, section 1170.95 was renumbered section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10).

As explained *post*, defendant's appeal is untimely. Even assuming it is timely, defendant's arguments exceed the scope of his second petition for rehearing. The second petition was predicated on intervening case law. The arguments he raises in this appeal do not concern the same intervening case law. Instead, the arguments could have been asserted in an appeal from the denial of his first petition. We accordingly dismiss the appeal.

STATEMENT OF FACTS

I.

THE UNDERLYING OFFENSES[3]

Around 2003, defendant was 19 years old and was a "semi-permanent house guest" at the home of co-defendant Garrett Kazuo Ige. (*People v. Ige* et al. (May 28, 2015, G050722) [nonpub. opn.].) Defendant, co-defendant, co-defendant's brother, and others spent almost every day drinking and doing drugs in co-defendant's garage. (*Ibid.*)

Around the same time, co-defendant owed money to a drug dealer for a failed venture to grow psychedelic mushrooms. (*People v. Ige* et al. (May 28, 2015, G050722) [nonpub. opn.].) In October 2003, the drug dealer and his friend were last seen at co-defendant's home where they were killed. (*Ibid.*) Defendant was present at the house on that day. (*Ibid.*) Defendant testified that he, co-defendant, and co-defendant's brother put the victims' bodies in the back of a car and drove to a campsite. (*Ibid.*) A witness later found the victims' bodies, which were charred, in a flood control channel. (*Ibid.*)

---

[3] We provide a factual summary from the prior appellate decision affirming the judgment. (*People v. Ige* et al. (May 28, 2015, G050722) [nonpub. opn.].) The summary is provided solely for context. (*People v. Love* (2025) 107 Cal.App.5th 1280, 1283, fn. 2.)

A friend who regularly did drugs with defendant and co-defendant testified that co-defendant reported his brother killed one victim while defendant bludgeoned the other with an axe handle. (*People v. Ige* et al. (May 28, 2015, G050722) [nonpub. opn.].) The friend recalled defendant "saying something like they had to 'take those fools out.'" (*Ibid.*)

A jury convicted defendant and co-defendant of first degree murder of the drug dealer and his friend. (*People v. Ige* et al. (May 28, 2015, G050722) [nonpub. opn.].) As noted *ante*, the jury also found true lying-in-wait and multiple-murder special circumstance allegations.

In affirming the judgment, another panel of this court noted: "The prosecution pursued two theories of first degree murder: (1) murder with premeditation and deliberation; and (2) special circumstances lying-in-wait and multiple murders . . . . The jury was instructed on the natural and probable consequences doctrine as it related to a conspiracy, but not aiding and abetting." (*People v. Ige* et al. (May 28, 2015, G050722) [nonpub. opn.].) The court further explained: "[T]he prosecution could not specify what roles each defendant played in the murders. Consequently, the prosecution alleged, and the instructions explained, defendants' culpability could be based on their personal participation in the murders, participation as direct aiders and abettors to murder, or as members of an uncharged conspiracy . . . to commit murder." (*Ibid.*)

## II.

### DEFENDANT'S FIRST PETITION FOR RESENTENCING

In his initial petition for resentencing, defendant averred: "1. An indictment was issued against [me] which allowed the prosecution to proceed under a theory of murder under the natural and probable consequences doctrine. [¶] 2. At trial, the prosecution pursued theories of guilt as

4

participants, direct aiders and abettors, and under the natural and probable consequence doctrine. [Citation.] [¶] 3. The prosecution could not specifically allege what role [I] played in the murder. [Citation.] [¶] 4. On March 12, 2013, [I] was found guilty of multiple counts of murder. The jury also found allegations of special circumstance and lying-in-wait to be true. [¶] 5. The jury did not specify under which theory [I] was found guilty. [¶] 6. [I] could not now be convicted of 1st degree murder because of the changes made to Penal Code Section 188 and 189, effective January 1, 2019 . . . ."

On November 5, 2021, the court summarily denied the petition after a hearing. The court's minute order indicated findings were stated on the record, but the record on appeal does not include a reporter's transcript of the hearing.

III.

DEFENDANT'S SECOND PETITION FOR RESENTENCING

In his second petition for resentencing filed in August 2023, defendant averred: "1. An indictment was issued against [me] which allowed the prosecution to proceed under a theory of murder under the natural and probable consequences doctrine. [¶] 2. At trial, the prosecution pursued theories of guilt as participants, direct aiders and abettors, and under the natural and probable consequence doctrine. [Citation.] [¶] 3. The prosecution could not specifically allege what role [I] played in the murder. [Citation.] [¶] 4. On March 12, 2013, [I] was found guilty of multiple counts of murder. The jury also found allegations of special circumstance and lying-in-wait to be true. [¶] 5. The jury did not specify under which theory [I] was found guilty. [¶] 6. *The Supreme Court of California has held that these findings by the jury are not sufficient to justify the sentence imposed upon [me] because [my] case was decided prior to People v. Banks. (People v. Strong, 46 Cal 302)* [¶] 7. [I]

5

could not now be convicted of 1st degree murder because of the changes made to Penal Code Section 188 and 189, effective January 1, 2019 . . . ." (Italics added.)

A few days later, the court clerk issued a "Response to Request," which noted defendant's "correspondence" was forwarded to a different judge and was denied because "[t]his was previously denied on 11/05/21."

IV.

DEFENDANT'S MOTION FOR RECONSIDERATION

In September 2023, defendant filed a motion for reconsideration. The motion suggested the trial court had denied defendant's initial petition at the prima facie stage because the jury found true the lying-in-wait allegation. (§ 190.2, subd. (a)(15)). Relying on *People v. Strong* (2022) 13 Cal.5th 698 (*Strong*), which was decided after the trial court's decision, defendant argued our Supreme Court essentially held "the trial court's analysis in the first petition was erroneous."

At the hearing on the motion for reconsideration, the trial court noted its tentative decision was to deny the motion because there had not been any new change in the law favorable to defendant. The court noted *Strong* "could [not] possibly assist . . . defendant because this is not a felony murder case." In response, defense counsel argued: "[W]hat *Strong* says is that any jury finding[s] that occur before [*People v. Banks* (2015) 61 Cal.4th 788 (*Banks*)] were not sufficient to be a prima facie bar to [defendant's] resentencing." He added: "The jury was never told that in order to find . . . [defendant] committed premeditated murder they had to be able to identify his specific . . . actions within the crimes themselves. The jury was told that they could find based on pre-Banks rulings that . . . if they believed the prosecution's case and believed what the evidence was presented to them, it

6

was sufficient that they just would believe he was a part of it. The law has become much more stringent now in that they have to identify specific actions that were made by [defendant] in furtherance of that crime. If they can't do that, . . . then [defendant] couldn't have been convicted of first-degree murder. He couldn't be convicted of . . . the lying in weight portion of his sentence." The prosecutor disagreed, arguing *Banks* was inapplicable because it involved felony murder unlike the instant case.

After hearing argument from both parties, the court denied the motion and found *Banks* was a felony murder case that "involved the scope of liability under the natural and probable consequences theory." The court noted defendant's case was "not a situation involving any sort of similar vicarious theory of liability." Instead, defendant was convicted of first degree murder based on three possible theories: (1) he was the direct perpetrator; (2) he aided and abetted the actual killer with the intent to assist, encourage, or facilitate the murder; or (3) he was a member of a conspiracy to commit murder. The court concluded "the reasoning underlying the original denial of the prima facie . . . is still correct and is not disturbed by the legal authorities . . . defendant is advancing."

Defendant appealed from the denial of his motion for reconsideration.

## DISCUSSION

The Attorney General contends the instant appeal should be dismissed for lack of jurisdiction. According to the Attorney General, defendant did not timely appeal from the August 2023 denial of his second petition, and the subsequent order denying his motion for reconsideration is not appealable. We agree.

7

Here, defendant's notice of appeal was untimely. The court denied defendant's second petition on August 30, 2023. Defendant insists the August 2023 denial "was not a decision on the contents of [the] new petition, but a mere iteration that an original petition had previously been denied." Not so. The document clearly states: "Request Denied." Although the court's reasoning for the denial may have been incorrect, the denial was still a decision on the petition. The denial was therefore an appealable postjudgment order, and defendant had 60 days from August 30, 2023 to file his notice of appeal. (Cal. Rules of Court, rule 8.308(a).) Defendant did not file a notice of appeal until January 2024, which was well past the 60-day deadline.

To the extent defendant suggests he can appeal from the denial of his motion for reconsideration, an order denying a motion for reconsideration is generally not appealable. (Code Civ. Proc., § 1008, subd. (g).) Although a party may appeal "[f]rom any order made after judgment, affecting the substantial rights of the party" (§ 1237, subd. (b)), "an order ordinarily is not appealable when the appeal would merely bypass or duplicate appeal from the judgment itself." (*People v. Gallardo* (2000) 77 Cal.App.4th 971, 980–981.) Here, allowing an appeal from the order denying reconsideration would improperly extend the time for an appeal, and defendant's motion for reconsideration was based on the same facts and law as his petition.

For these reasons, we dismiss the appeal. "'An untimely notice of appeal is "wholly ineffectual: The delay cannot be waived, it cannot be cured by nunc pro tunc order, and the appellate court has no power to give relief, but must dismiss the appeal on motion of a party or on its own motion."'" (*In re Chavez* (2003) 30 Cal.4th 643, 650.)

8

Even assuming the appeal was timely, we could not address the merits of defendant's arguments. Defendant does not address *Strong* or any intervening change in the law that was the basis of the second petition. Instead, defendant argues: (1) inadequate jury instructions on uncharged conspiracy (CALCRIM No. 417) undermined the validity of his murder convictions; (2) the CALCRIM No. 521 (first degree murder) instructions do not make him ineligible for relief; and (3) the special circumstance findings do not preclude resentencing relief. As to the second argument above, defendant appears to suggest he could have been convicted as an aider and abettor without an actus reus finding or based on aiding and abetting a lying-in-wait murder without a finding that he harbored malice.

A successive petition may properly rely on an intervening change in the law, but it does not reopen issues that could have been raised in an earlier petition or on appeal from its denial. (*People v. Harden* (2022) 81 Cal.App.5th 45, 52 [second petition was not barred where it was based on new law that did not exist at the time of the first petition]; *People v. Farfan* (2021) 71 Cal.App.5th 942, 951 [successive petition was appropriate where it was "based on new authority which challenged the primary ground for the superior court's summary denial" of the first petition].) Nor does it permit a defendant to relitigate every conceivable theory untethered to the change in law that justified the successive filing. Defendant's current appellate arguments could have been raised in connection with his first petition. Indeed, in providing its reasoning, the trial court noted: "My recollection is that this was, essentially, the same reasoning that I applied the last time that I considered this." Defendant did not appeal from the denial of his first petition, and his second petition does not expand the permissible scope of

9

review. We therefore would not reach the merits of defendant's arguments in this appeal.[4]

DISPOSITION

The appeal is dismissed.


SANCHEZ, J.

WE CONCUR:


MOTOIKE, ACTING P. J.


SCOTT, J.

---

[4] Defendant has filed a request for judicial notice asking that we take judicial notice of the verdicts used by the jury in his trial. We deny defendant's request because the documents are not necessary to the resolution of this appeal.