Filed 7/18/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B329800 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. PA077370) |
| v. | |
| MIGUEL ALBERTO ESQUIVIAS, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Daniel B. Feldstern, Judge. Affirmed.

Lenore De Vita, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant

Attorney General, Steven D. Matthews and Amanda V. Lopez, Deputy Attorneys General, for Plaintiff and Respondent.

* * * * * *

In 2022, Miguel Alberto Esquivias (defendant) filed a petition for a writ of habeas corpus asking the trial court to dismiss his firearm enhancements because his convictions were not final on January 1, 2018—when a new law took effect granting courts the discretion to dismiss those enhancements. The trial court ruled that defendant had made a "prima facie showing" as to those "firearm enhancements," held a hearing on defendant's habeas petition limited to that "specific relief," and went on to dismiss those enhancements. Relying on *People v. Padilla* (2022) 13 Cal.5th 152 (*Padilla*) and *People v. Buycks* (2018) 5 Cal.5th 857 (*Buycks*), defendant argues that once the court agreed to revisit one part of his sentence, it was obligated to revisit his entire sentence—and vacate his underlying convictions—in light of new laws that took effect after his convictions became final. He is wrong. Habeas review is issue specific (*People v. Superior Court (Pearson)* (2010) 48 Cal.4th 564, 572 (*Pearson*)), and the trial court here understandably limited its review to only those enhancements affected by the new law retroactively applicable to defendant's conviction. Defendant's proffered "revisit-*any*-on-habeas, revisit-*all*-on-habeas" rule is inconsistent with these fundamental tenets of habeas review, is inconsistent with our Legislature's express intent to make only certain new laws fully retroactive, and is likely to *discourage* trial courts from revisiting any part of a sentence on habeas—thereby *harming* defendants. *Padilla* and *Buycks* do not dictate

2

otherwise, as they arose in different procedural contexts. We accordingly affirm the trial court's order.

## FACTS AND PROCEDURAL BACKGROUND

I.  **Facts**[1]

A.  *Murder*

In June 2013, defendant walked up to Manuel Haro (Haro) and shot him several times, killing him. This shooting was the culmination of an internecine feud among members of the "818" clique of the Wicked Insane Diablos street gang. Defendant and his friend Kimberly Garcia (Garcia) had a falling out with Haro and Haro's friend James Posey (Posey). Before acting on his soured feelings, Esquivias got permission from the "older homies" overseeing the Wicked Insane Diablos to "handle" the problem; he also got "the okay" to kill Haro and Posey. After defendant, Garcia, and Alondra Salinas (Salinas) spent a few weeks taunting and threatening to kill Haro and Posey, defendant ultimately had Garcia and Salinas drive him to Haro's location, where he got out of the car, walked up to an unarmed Haro, and shot him repeatedly.

B.  *Armed robberies*

Fifteen days after killing Haro, defendant and Garcia robbed two people at gunpoint. In the midst of one of the robberies, defendant asked one victim for his gang affiliation.

---

1     We draw these facts from our prior opinion affirming defendant's convictions. (*People v. Esquivias* (July 26, 2017, B268972) [nonpub. opn.].)

## II. Procedural Background

### A. *Prosecution, conviction, and direct appeal*

The People charged defendant with murder (Pen. Code, § 187, subd. (a))[2] and two counts of robbery (§ 211).[3] The People also alleged that (1) the murder involved the discharge of a firearm causing death (§ 12022.53, subd. (d)); (2) the robberies involved the use of a firearm (§ 12022.5); and (3) the murder and robberies were for the benefit of, at the direction of, or in association with a criminal street gang (§ 186.22). The People further alleged that defendant's prior conviction for first degree burglary constituted a "strike" within the meaning of our "Three Strikes" law (§§ 1170.12, subds. (a)-(d), 667, subds. (b)-(j)) as well as a prior serious felony conviction (§ 667, subd. (a)).

A jury convicted defendant of first degree murder and both counts of robbery, and found all of the enhancements true.

After denying defendant's motion to dismiss his prior strike conviction, the trial court sentenced defendant to prison for 75 years to life, plus 37 years and 8 months. For the murder count, the court imposed a base term of 50 years (25 years, doubled due

---

[2] All further statutory references are to the Penal Code unless otherwise indicated.

[3] The People also charged defendant with being a felon in possession of a firearm at the time of the charged murder (§ 29800, subd. (a)(1)) and making criminal threats (§ 422). Because the jury acquitted defendant of the latter count, and because the sentence for the former count was stayed (and thus does not affect any of our sentencing calculations), we will not discuss them further.

Garcia and Salinas were also charged, but their convictions and sentences are not at issue here, so we will also not discuss them further.

to the prior strike) plus a consecutive 25 years to life for intentionally discharging a firearm causing death.  For the first robbery count, the court imposed a consecutive sentence of 29 years comprised of a base term of four years (a midterm sentence of two years, doubled due to the prior strike), plus 10 years for the personal use of a firearm, plus 10 years for the gang enhancement, plus five years for the prior serious felony conviction.  For the second robbery count, the court imposed a consecutive sentence of eight years and eight months comprised of a base term of two years (one-third of a midterm three-year sentence, doubled due to the prior strike), plus three years and four months (one-third of 10 years) for the personal use of a firearm, plus three years and fourth months (one-third of 10 years) for the gang enhancement.

On July 26, 2017, we affirmed defendant's convictions and sentence.  (*People v. Esquivias* (July 26, 2017, B268972) [nonpub. opn.].)  The California Supreme Court denied review on November 1, 2017.  Defendant's convictions accordingly became final on January 30, 2018.  (*People v. Vieira* (2005) 35 Cal.4th 264, 306 [conviction becomes final once "'the time for petitioning for a writ of certiorari in the United States Supreme Court has passed'"].)

**B.**  *Habeas petition*

On January 24, 2022, defendant acting in propria persona filed a petition for writ of habeas corpus asking the trial court to exercise the discretion newly conferred upon it by Senate Bill No. 620 (2017-2018 Reg. Sess.) to dismiss the firearm enhancements and thereby reduce his sentence.  Defendant's convictions were not final when Senate Bill No. 620 took effect on January 1, 2018.  (Stats. 2017, ch. 682, §§ 1, 2.)  The trial court appointed counsel

5

for defendant and ordered further briefing.  The People filed two responses. Defendant filed a traverse in which, for the first time, he asked the trial court to (1) resentence him on the gang enhancement and vacate all of his convictions under Assembly Bill No. 333 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 699, § 4, eff. Jan. 1, 2022); and (2) revisit its earlier decision not to dismiss his prior strike conviction.

The trial court issued an order finding a "prima facie showing" as to defendant's "petition seeking relief *for the firearm enhancements*" and set a hearing "for potential sentencing modification *on that specific issue*."  (Italics added.)

At a hearing in March 2023, the court ruled that defendant was eligible for retroactive relief under Senate Bill No. 620, found that defendant's overall sentence was not "proportional," and exercised its discretion to strike all of the firearm enhancements. The court rejected defendant's request to expand the scope of the habeas proceeding to reach defendant's other sentencing challenges.  The court explained that it had "done [its] best to . . . limit th[e] scope" of "this particular habeas" proceeding to the "firearm enhancements," that the court accordingly lacked "jurisdiction" to "include every ameliorative change in law up to today's date," and that forcing the court to revisit and shorten other aspects of defendant's sentence beyond the firearm enhancements would "undermine" the court's "intention[]" to dismiss the firearm enhancements.

Without the firearm enhancements, defendant's overall sentence was shorter by 38 years and four months.  Specifically, without the firearm enhancements, defendant's sentence on the murder conviction became 50 years to life, defendant's sentence on the first robbery count became 19 years, and defendant's

sentence on the second robbery count became five years and four months.

**C.** *Appeal*

Defendant filed this timely appeal.

## DISCUSSION

It is undisputed that the trial court limited its grant of habeas review in this case to the "potential sentencing modification" resulting from Senate Bill No. 620's grant of discretion to dismiss firearm enhancements. Defendant argues that the court's decision to grant review on this specific issue *also* obligated the court to reconsider his convictions and sentence in their entirety in light of two laws taking effect after his convictions became final—namely, (1) Assembly Bill No. 333, which adds new elements to the gang enhancement and requires that gang enhancement allegations be bifurcated from the underlying charges (§§ 186.22, subds. (e) & (f), 1109);[4] and (2) Senate Bill No. 1393 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1013, eff. Jan. 1, 2019), which grants courts discretion to strike or dismiss prior serious felony convictions.

This appeal[5] thus presents the following question: Is a trial court that grants habeas review to reconsider one aspect of a

---

[4] In *People v. Burgos* (2024) 16 Cal.5th 1, our Supreme Court held that the bifurcation aspect of Assembly Bill No. 333 was not retroactive even to nonfinal convictions. (*Id.* at p. 8.)

[5] It is not entirely clear whether the matter before us is more properly viewed as (1) a challenge to the denial of a habeas petition, which is subject to review by filing a separate habeas petition in this court and not by appeal (*People v. Gallardo* (2000) 77 Cal.App.4th 971, 983); or (2) an appeal of the order the trial court ultimately issued striking the firearm enhancements. We

defendant's sentence obligated to grant review to reconsider *all* aspects of the defendant's sentence and thereby give the defendant the benefit of all ameliorative laws that took effect after the defendant's conviction and sentence became final?  In other words, is there a "revisit-*any*-on-habeas, revisit-*all*-on-habeas" rule?  This is a question of law that we review de novo. (*Smith v. LoanMe, Inc.* (2021) 11 Cal.5th 183, 190.)

**I.    Analysis**

We hold that a trial court is *not* obligated to revisit a defendant's *entire* sentence on habeas review merely because it grants review to revisit a portion of that sentence.  We so hold for two reasons.

**A.    *Inconsistent with postconviction criminal procedure***

First, a "revisit-*any*-on-habeas, revisit-*all*-on-habeas" rule is inconsistent with the law governing postconviction criminal procedure, and particularly the law governing habeas corpus.

Once a criminal defendant's conviction and sentence become final, trial courts lack jurisdiction to revisit that judgment absent a specific, authorized vehicle for doing so; there is no free-floating jurisdiction to revisit a final criminal judgment. (*In re G.C.* (2020) 8 Cal.5th 1119, 1129-1130 (*G.C.*); *People v. Karaman* (1992) 4 Cal.4th 335, 344; *People v. King* (2022) 77 Cal.App.5th 629, 634, 636-637.)  The writ of habeas corpus is one such vehicle, and it empowers trial courts to revisit unauthorized

_____

have jurisdiction either way:  If defendant should have filed a habeas petition, we have the discretion to construe what was filed as such a petition (*People v. Hodges* (2023) 92 Cal.App.5th 186, 190); and if defendant should have filed an appeal, he did just that.

criminal judgments (*Buycks*, *supra*, 5 Cal.5th at p. 895; *In re Harris* (1993) 5 Cal.4th 813, 838-839, overruled on another ground in *Shalabi v. City of Fontana* (2021) 11 Cal. 5th 842, 855; *King*, at p. 637), including sentences that are unauthorized because they do not comply with existing statutory law (*Harris*, at p. 839).

A trial court does not regain jurisdiction over a criminal judgment through habeas corpus until the court issues an order finding that a habeas petition has set forth a prima facie case for relief. (*In re Serrano* (1995) 10 Cal.4th 447, 455 [the issuance of an "order to show cause" based on the showing of a prima facie entitlement to relief is what "creates a 'cause'" that re-invokes the court's jurisdiction]; *In re Bacigalupo* (2012) 55 Cal.4th 312, 332.) Acts prior to such a finding—including a defendant's filing of a petition and a court's consideration of *whether* that petition sets forth a prima facie case—do *not* re-open jurisdiction. (*People v. Guillory* (2022) 82 Cal.App.5th 326, 335 ["*filing* a collateral attack does not make a judgment nonfinal"]; see also *People v. Walker* (2021) 67 Cal.App.5th 198, 205 (*Walker*) [trial court's decision whether to resentence does not re-open a conviction if court ultimately elects not to resentence].)

A trial court's issuance of an order to show cause is not an "all-or-nothing" proposition: A trial court has discretion in deciding how to exercise its habeas jurisdiction and may limit a grant of habeas review to a "specific claim or claims" presented in a petition. (*Pearson*, *supra*, 48 Cal.4th at p. 572; *Robinson v. Lewis* (2020) 9 Cal.5th 883, 895 ["[a]ll courts in California have original habeas corpus jurisdiction, but that does not mean all courts must exercise it in all circumstances"]; *Schlup v. Delo* (1995) 513 U.S. 298, 319 ["habeas corpus is, at its core, an

9

equitable remedy"]; *In re Clark* (1993) 5 Cal.4th 750, 781, fn. 16, superseded by statute on other grounds as stated in *Briggs v. Brown* (2017) 3 Cal.5th 808, 842.) Indeed, a trial court's grant of review on one "specific issue [constitutes] an implicit determination that a prima facie case has not been made as to the other issues presented in the [habeas] petition." (*People v. Bloyd* (1987) 43 Cal.3d 333, 363 (*Bloyd*).)

A "revisit-*any*-on-habeas, revisit-*all*-on-habeas" rule is inconsistent with the above-stated principles for two reasons. It is inconsistent with the rules governing habeas relief. That is because it would mandate the grant of habeas review as to an entire sentence whenever a trial court grants review on one part of that sentence. By depriving trial courts of their longstanding discretion to tailor their exercise of habeas jurisdiction, we would be converting habeas from an elegant, issue-specific scalpel into a blunt, "in for a penny, in for a pound" cudgel. It is also inconsistent with—and arguably perverts—the rules governing postconviction relief more generally. As our Supreme Court recently reaffirmed, the existence of an *unauthorized* sentence does not by itself create jurisdiction to correct that error (*G.C.*, *supra*, 8 Cal.5th at pp. 1129-1130), yet defendant's proffered rule would mandate the grant of habeas review as to portions of a sentence that are not even unauthorized. Here, for example, defendant was not eligible for relief under Assembly Bill No. 333 and Senate Bill No. 1393 at the time he filed his habeas petition because his criminal judgment became final before these bills took effect, which means that his sentence was not unauthorized for failure to take those bills into consideration, yet defendant urges a rule that would *require* a trial court to accept jurisdiction over those claims.

10

**B.** *No "cascading retroactivity"*

Second, a "revisit-*any*-on-habeas, revisit-*all*-on-habeas" rule would inevitably lead to "cascading retroactivity": Once a defendant shows an entitlement to retroactive relief under one ameliorative statute (because his criminal judgment was not final when that statute took effect), the court would be obligated to grant habeas review on the defendant's *entire* sentence, which would render that entire sentence "nonfinal," which in turn would render the defendant eligible for retroactive relief under all ameliorative statutes enacted up to the time the court considers the defendant's habeas petition.

Such cascading retroactivity is problematic for several reasons.

To begin, it is inconsistent with legislative intent. When enacting statutes that grant criminal defendants ameliorative relief (that is, statutes that reduce sentences or add new elements to existing crimes or sentencing enhancements), our Legislature has the choice of whether to make them purely prospective, retroactively applicable to defendants whose convictions are not yet final, or fully retroactive to all defendants regardless of the finality of their convictions. By effectively making all ameliorative relief statutes fully retroactive, cascading retroactivity impermissibly rewrites the text of statutes and ignores legislative intent as to those statutes our Legislature opted *not* to make fully retroactive. (*J.M. v. Huntington Beach Union High School Dist.* (2017) 2 Cal.5th 648, 657, fn. 7 ["It is not for us to rewrite . . . statute[s]"]; *People v. Alatorre* (2021) 70 Cal.App.5th 747, 765 [courts may not "contraven[e] a manifest legislative intent"].)

11

More to the point, cascading retroactivity may end up *hurting* defendants. Trial courts aware that granting relief as to part of a sentence will obligate them to grant relief as to the entire sentence may elect not to grant relief at all, even if they were otherwise inclined to grant relief as to just one part. The trial court's ruling here is a case in point: The court expressly noted that its "intention[]" to reduce defendant's sentence by dismissing just the firearm enhancements would be "undermined" if it were also obligated to dismiss the gang enhancement, dismiss the prior serious felony enhancement, and, under the law in effect at the time, ostensibly vacate all of defendant's convictions due to the failure to bifurcate the gang enhancement. If forced to choose between leaving defendant's sentence untouched and vacating all of his convictions, the trial court here indicated its inclination to leave it untouched—even though it was otherwise ready (and willing) to reduce defendant's sentence by nearly 40 years if that partial-grant option were on the table.

## II. Defendant's Arguments

Defendant offers what boils down to two arguments in support of his proffered "revisit-*any*-on-habeas, revisit-*all*-on-habeas" rule.

First, defendant argues that his proffered rule is mandated by the following syllogism: (1) *Padilla*, *supra*, 13 Cal.5th at pp. 162-164 holds that the grant of habeas relief to vacate a sentence renders that sentence "nonfinal" for purposes of applying ameliorative relief statutes; (2) *Buycks*, *supra*, 5 Cal.5th at p. 893 holds that "full resentencing" as to *all* aspects of a sentence is required if a "part of a sentence" is revisited (accord, *People v. Valenzuela* (2019) 7 Cal.5th 415, 424-425); so (3) putting *Padilla*

12

and *Buycks* together, a grant of habeas relief as to a part of a sentence mandates a *full* resentencing and hence renders the *entire* sentence "nonfinal" and eligible for application of all ameliorative relief statutes in effect at the time of the habeas proceeding.

We find this syllogism unpersuasive for several reasons.

For starters, its two building blocks—*Padilla* and *Buycks*—arose in different procedural postures and hence do not support the broader principle for which defendant is using them. In *Padilla*, the question was the effect of an earlier order on a habeas petition that had already vacated the defendant's entire sentence (*Padilla*, *supra*, 13 Cal.5th at p. 158); here, the question is whether a court is required to vacate the entire sentence in the first place. In *Buycks*, the question was the effect of an earlier order that had already recalled a sentence under section 1170.18 (*Buycks*, *supra*, 5 Cal.5th at pp. 873, 893-895); here, the question is whether a court is required to recall the entire sentence in the first place.

Moreover, the syllogism is flatly inconsistent with the law of habeas corpus detailed above because it would deprive trial courts of their longstanding discretion to grant habeas review on an issue-by-issue basis. By overriding a trial court's express or implied discretion *not* to grant review on certain issues, the syllogism also runs afoul of the corollary that courts generally respect one another's exercise of that discretion. (*Walker*, *supra*, 67 Cal.App.5th at pp. 204-205 [where an appellate court order on remand "limits the scope of resentencing" to one issue, trial court must adhere to that limit]; *People v. Ramirez* (2019) 35 Cal.App.5th 55, 64 [same]; *Bloyd*, *supra*, 43 Cal.3d at p. 363 [implying declination of jurisdiction on some issues from exercise

13

of jurisdiction on others]; cf. *Walker*, at p. 201 [if remand order does not explicitly limit scope of resentencing, court must consider all aspects of sentence]; *In re A.M.* (2024) 102 Cal.App.5th 557, 568 (*A.M.*) [order to show cause encompassed retroactive application of new sentencing laws].)

Second, defendant contends that a full resentencing in this case is supported by *People v. Salgado* (2022) 82 Cal.App.5th 376 and *People v. Sek* (2022) 74 Cal.App.5th 657.  He is wrong. *Salgado* held that a defendant is entitled to the benefit of ameliorative relief statutes as of the date of resentencing after his sentence was *recalled* under section 1172.1.  (*Salgado*, at pp. 379-381.)  Here, however, the trial court only granted review as to the firearm enhancements and did not exercise jurisdiction over—let alone recall—any other part of his sentence.  *Sek* held that a defendant was entitled to the benefit of Assembly Bill No. 333, which was in effect at the time that he was resentenced after his conviction and sentence had already been vacated on appeal. (*Sek*, at pp. 664, 666-667; accord, *A.M.*, *supra*, 102 Cal.App.5th at pp. 560-561 [defendant entitled to benefit of Senate Bill No. 1391 (2017-2018 Reg. Sess.), which was in effect after his sentence was "conditionally reversed on habeas corpus"].)  Here, however, there was no prior remand order from this court vacating defendant's sentence; defendant's sentence remained intact and final except to the extent the trial court granted habeas review of the firearm enhancements.

## DISPOSITION

The trial court's order is affirmed, or, in the alternative, defendant's petition for a writ of habeas corpus is denied.

**CERTIFIED FOR PUBLICATION.**


_____, J.
HOFFSTADT


We concur:


_____, Acting P. J.
ASHMANN-GERST


_____, J.
CHAVEZ